Joe Earl **TAYLOR**, as Administrator of the Estate of Thomas S. Taylor, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 80-378-9.

United States District Court,
D. South Carolina,
Columbia Division.

March 31, 1981.

---

648

William F. Able, Michael A. Pulliam, Columbia, S. C., for plaintiff.

Joseph A. Wilson, II, Asst. U. S. Atty., Columbia, S. C., for defendant.

## ORDER

CHAPMAN, District Judge.

This matter is before the Court upon the defendant's motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The defendant seeks an Order dismissing this action on the grounds that the court lacks jurisdiction over the subject matter of the action and that the complaint fails to state a claim upon which relief can be granted. The defendant alleges that certain exceptions to the Federal Tort Claims Act (hereinafter "FTCA") bar the plaintiff's action. The defendant also claims that even if the action is not barred by the FTCA, that no act by the defendant can be said to be the proximate cause of any injuries sustained by plaintiff or his decedent.

This action arises out of the brutal murders of two Columbia teenagers in the fall of 1977. The three men charged with the murders have either pleaded guilty or have been convicted of the October 29, 1977, murders of Thomas Taylor, age 17, and Carlotta Hartness, age 14.

The perpetrators, J. C. Shaw, James T. Roach, and Eugene Mahaffey had been spending that Saturday morning using drugs and drinking beer. Sometime early in the afternoon, according to Mahaffey, the three decided to ride around and "see if we could find a girl to rape."

They stopped at Polo Park, a baseball park located northeast of Columbia in a rural area off Alpine Road. They came upon a parked car occupied by Thomas Taylor and Carlotta Hartness.

Shaw, who was the driver of the car, pulled up beside the Taylor car in such a way that Roach, who was riding in the front passenger side, was directly across from Taylor. On instructions from Shaw, Roach pointed a .22 caliber rifle through the car window at Taylor and demanded money. Taylor complied and Shaw and Mahaffey then got out of their car, took the keys out of Taylor's car, and forced Miss Hartness out of Taylor's car and into Shaw's car. Shaw returned to his car, and Roach, at the direction of Shaw, shot and killed Taylor who was still sitting in his car.

Miss Hartness was subsequently taken to a wooded area by Roach, Shaw, and Mahaffey, where she was raped, assaulted, and brutally murdered.

Roach, Shaw, and Mahaffey were arrested on November 3, 1977. Shaw pleaded guilty on all charges, and was sentenced to death. His conviction is on appeal.

At the time of the murders, Private First Class Joseph Carl Shaw was a member of the Armed Forces of the United States, and was assigned to the 130th Military Police Company, stationed at Fort Jackson, South Carolina. It is on the basis that Shaw was a government employee that the plaintiff, father of the victim Taylor, has filed suit. The action, which seeks 1.5 million dollars in damages, was commenced pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 et seq. (1976).[1] The plaintiff alleges that Shaw sought treatment for his drug and psychological problems, but that certain government employees at Fort Jackson failed to provide treatment, and that they failed to exercise the degree of skill necessary to treat him effectively. The plaintiff further alleges that the government employees responsible for Shaw's treatment wrongfully and negligently failed to exercise due care in their failure to institutionalize Shaw, or otherwise provide for his proper care and treatment. Plaintiff alleges that as a di-

1. Prior to institution of this action, plaintiff presented his claim in writing to the United States Department of the Army for damages suffered as a result of defendant's negligence. The claim was denied by the Department of the Army by letter dated August 28, 1979, and this suit was commenced within six months of the denial of the claim. Plaintiff, therefore, has complied with the prerequisites for bringing suit under the FTCA as set forth in 28 U.S.C. § 2675.

rect and proximate result of the government's negligence, his son was subjected to mental anguish, was mutilated, and was killed.

The defendant, the United States, submits that the action should be dismissed for four reasons:

1. The basis of the suit, the murder of Tommy Taylor, is an assault and battery; section 2680(h) of the FTCA prohibits a tort suit against the United States for "any claim arising out of assault and/or battery."

2. Shaw was off-duty and outside the scope of his government employment at the time of the incident; therefore, no liability can be imputed to his employer, the United States.

3. Plaintiff's claim is barred by the discretionary function exception to the tort claims act.

4. No action by this defendant was the proximate cause of the injuries sustained by the decedent.

Because the Court finds that the first issue is dispositive, there is no need to discuss the other three arguments urged by the defendant. An analysis of the FTCA, and the many cases based on this well-litigated exception, convince this Court that the defendant's motion to dismiss must be granted.

Traditionally, the sovereign has always been immune from suit. To alleviate the harshness of this rule, Congress enacted the Federal Tort Claims Act which permits civil actions against the United States for personal injury and property damage caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b) (1976). Section 2680 of Title 28, however, lists several claims expressly excepted from the purview of the Act, among which are any claims arising out of an assault or battery.[2] Because the United States has not consented to be sued for these torts, federal courts are without jurisdiction to entertain a suit based upon them. *Gardner v. United States*, 446 F.2d 1195, 1197 (2nd Cir. 1971), *cert. denied*, 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481 (1977).

The complaint, therefore, fails for lack of jurisdiction. *U. S. v. Edens*, 372 F.Supp. 1317 (D.S.C.1974). Jurisdiction to grant relief against the United States "depends wholly upon the extent to which the sovereign has waived its immunity to suit" and the waiver must be express. *U. S. v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). In *U. S. v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), the Court held also that "such a waiver cannot be implied but must be unequivocally expressed." *Id.* at 4, 89 S.Ct. at 1503.

The plaintiff argues that his claim is not founded upon assault and battery, but rather upon the negligence of the government. Ever since the passage of the FTCA, litigants have tried to circumvent its exceptions by alleging that harm was caused not by an act for which sovereign immunity remained a bar, but rather by antecedent negligence. These attempts generally failed because the courts looked to the essence of the claim, and ignored the attempts of the plaintiff to characterize it in another way. *See, e. g., Lambertson v. U. S.*, 528 F.2d 441, 444–45 (2nd Cir. 1976) *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976). This Court has been influenced by the reasoning of the district court in *Collins v. U. S.*, 259 F.Supp. 363 (D.Pa.1966). In *Collins*, a mailman alleged to be "acting in the scope of his employment, pushed, hit and struck the plaintiff." The complaint charged that the United States was negligent in hiring and retaining the mailman when it knew or should have known of his "violent, vicious and malicious propensities." *Id.* at 364. The district court granted the government's mo-

---

**2.** § 2680, in pertinent part, provides as follows: The provisions of this chapter and section 1346(b) of this title shall not apply to . . . (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

tion to dismiss on the basis of the exception laid down in § 2680(h). In response to the plaintiff's argument that their claim arose not from assault and battery but from negligence, the Court stated:

It is true that the claim here is predicated on negligence. However, that negligence would have been without legal significance absent the alleged acts of (the mailman). Without that, there would have been no actionable negligence. It was the attack which served to attach legal consequences to defendant's alleged negligence. Congress could easily have excepted claims *for assault*. It did not; it used the broader language excepting claims *arising out of assault*. It is plain that the claim arose only because of the assault and battery, and equally plain that it is a claim arising out of the assault and battery. This being so, the United States has not waived its immunity as respects this claim. *Id.* at 364.

No doubt the plaintiff has suffered a tremendous loss at the hands of J. C. Shaw and his cohorts. Any sympathy the Court may feel for this plaintiff, however, must be put aside, and the law must be interpreted in accordance with the intent of Congress. It would be much more pleasant to reach a decision based upon what this Court wishes Congress had said, rather than what it did say. However, to allow the plaintiff to recover by "dressing up the substance" of battery in the "garments" of negligence would be to "judicially admit at the back door that which has been legislatively turned away at the front door." *Laird v. Nelms*, 406 U.S. 797, 802, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972); *Lambertson v. U. S.*, 528 F.2d 441 (2nd Cir. 1976).

One must merely examine the pleadings to see that the substance of plaintiff's complaint is precisely the kind of tort exempted from FTCA coverage by § 2680(h). No legal alchemy can transform it into a negligence action and confer jurisdiction where none exists. *Gaudet v. U. S.*, 517 F.2d 1034, 1035 (5th Cir. 1975).

A number of other courts have examined in great detail this seemingly simple excep-

tion to the FTCA. Any discussion of this issue would be incomplete without some analysis of the landmark decision in *Panella v. U. S.*, 216 F.2d 622 (2nd Cir. 1954). In that case Judge, later Justice, Harlan held that § 2680(h) did not bar an action arising out of an assault and battery. In *Panella* the plaintiff had been convicted and sentenced in State Court as an habitual drug addict. He was sentenced to a year in jail, but was placed on probation after electing to undergo treatment for his drug addiction at the Public Health Service hospital maintained by the Army. While an inmate at that institution he was assaulted by another inmate. He sued under the Federal Tort Claims Act to recover damages for his injuries, claiming that the assault was caused by the negligence of United States employees in failing to provide adequate guards and otherwise properly supervise those confined in the institution. In *Panella* the District Court granted defendant's motion for summary judgment. The Court of Appeals reversed, but on the sole ground that the exception in § 2680(h) did not apply to assaults by non-governmental employees.

The plain implication of *Panella* is that had the assault been by a government employe, the action would have been barred even though it was predicated on an allegation of negligence other than the assault itself. *Collins v. U. S.*, 259 F.Supp. at 364.

A more recent Tenth Circuit opinion further convinces the Court that it is without jurisdiction in this case. In *Naisbitt v. U. S.*, 611 F.2d 1350 (10th Cir. 1980), two off-duty airmen entered a private store and committed a series of atrocious acts, including assault, rape and murder. The plaintiffs' theory was that the United States was guilty of actionable negligence in failing to supervise and curtail the two men, because it was reasonably foreseeable that they would, unless restrained, commit these offenses. The District Court dismissed the complaint on the grounds that the claims arose from assault and battery, and therefore were barred by 28 U.S.C. § 2680(h), and noted the negligence was merely an

alternative theory of government liability. *Id.* at 1351, 1353. After analyzing a number of cases from various jurisdictions, the Tenth Circuit affirmed, and stated:

> [A] strong thread running through most of these cases is that which recognizes the immunity of the government where the assailant is an employee of the government. . . . The rationale for this appears to be that where the intervening assailant is an employee, the tort with which the government is charged is in fact as well as law an intentional one subject to the § 2680(h) provision. *There is a dearth of authority allowing an action to be prosecuted against the government under the Tort Claims Act where the intervening assailant was an employee.* In any case in which the employee has intentionally injured another, the tort asserted against the government, regardless of whether it is called negligence, is indeed an intentional tort attributable to the government. (emphasis added).

The Court also suggested that such intentional torts were, as a matter of law, intervening forces that vitiated the causal force of any governmental negligence.

Most of the cases, including the leading opinion of Judge Harlan in *Panella*, hold that the non-waiver of immunity contained in § 2680(h) is applicable where the intentional tort is committed by an employee. Thus, whether it is explicitly mentioned or not, effect is given to the employee distinction. Perhaps this stems from the proposition that where the employee has committed a tortious intentional act, even though it is not with the approval of his employer, nevertheless he is so closely connected with the government that the intentional act is imputed to the government. Because the government has waived liability only in negligence cases, and has retained its immunity in intentional tort cases in accordance with § 2680(h), an attempt to establish liability on a negligence basis is indeed an effort to circumvent the retention of immunity provided in § 2680(h).

The few cases that have held the government liable despite § 2680(h) can be distinguished on their facts.

In *Fair v. U. S.*, 234 F.2d 288 (5th Cir. 1956), the tortfeasor was in the service. He was an Air Force captain with known homicidal tendencies. He was also a patient in a government psychiatric hospital. He shot and killed a student nurse whom he had previously threatened. The action against the government claimed that he had been released from the hospital with knowledge of his propensities. The Court found that the government could not escape liability under the exercise of discretion exemption in § 2680(a). True, the tortfeasor was a government employee. He differs from the tortfeasor here, however, in that he was an employee as well as a patient in a mental hospital. The hospital had full knowledge of his propensities. It was this latter status which was stressed in holding that the hospital was liable. Because of this factual difference, the case is not directly supportive of the plaintiff's position here. Because of the hospital-patient relationship, and the duty to protect members of the assailant's family and the public generally from his dangerous propensities, it presents a strong case for liability.

In *Gibson v. U. S.*, 457 F.2d 1391 (3rd Cir. 1972), the assailant was not an employee, but a Job Corps trainee who committed an assault upon an employee of the Job Corps, an instructor. The theory of the plaintiff-employee was that the government had notice that the assailant was an addict and dangerous. The trial court's dismissal was reversed; specifically noted was the fact that the assailant was not an employee, but a third person.

Similarly, in *Hicks v. U. S.*, 167 U.S.App. D.C. 169, 511 F.2d 407 (1975), the plaintiffs were coadministratrices of the estate of Corinne Morgan. It was alleged that St. Elizabeth's Hospital, an agent of the United States, was negligent, and that as a result, the decedent was killed by her husband, a former patient at the hospital. He shot her after he had allegedly been given his freedom as a result of the hospital's negligence. The assailant husband was mentally incompetent, as the hospital well knew. The

Court there said that the hospital owed a duty to the public in carrying out its responsibilities. The assault was directly attributable to his insane condition, and it was held that the hospital was directly responsible for his release and for the act which was caused by his drinking together with his mental condition. Neither *Hicks* nor *Gibson* involved assaults by government employees. Although *Fair* upheld a claim, it did not address the employee issue. None are helpful to plaintiff here.

Plaintiff relies heavily upon a recent Massachusetts decision, *Loritts v. U. S.*, 489 F.Supp. 1030 (D.Mass.1980). In that case, the plaintiff, an invitee on the West Point campus, was assaulted and raped by a West Point student, a government employee. It was the government's negligence, and not its employee's assault, that was the substance of the claim asserted. This case was decided upon the ground that West Point had assumed a specific duty toward the plaintiff. She was a member of the choral group visiting on the West Point campus. West Point voluntarily undertook the task of providing escorts to the group of which plaintiff was a member. *Loritts* was based not upon the assault itself, but rather the breach of the duty that West Point assumed to the plaintiff. This case is similar to *Rogers v. U. S.*, 397 F.2d 12 (4th Cir. 1968) where the government was held liable because it assumed a duty to transport the plaintiff, a minor probationer, safely. *Rogers*, however, is not of any help to the plaintiff here, as it involved an assault by a third party.

Several cases have held, as does this Court, that where the assault is perpetrated by a government employee, the government is not liable. *See, e. g., Naisbitt v. U. S., supra; Pendarvis v. U. S.*, 241 F.Supp. 8 (D.S.C.1965). In a case that was affirmed by the Supreme Court, *Muniz v. U. S.*, 305 F.2d 285 (2nd Cir. 1962) *aff'd* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), the Court held that 2680(h) was not a bar when a prisoner alleges the government's negligence resulted in his being beaten by fellow jailmates. It "applies only to assaults by government *agents*, not to assaults by third parties which the government negligently fails to prevent.", and cites *Panella* as supporting this proposition. 305 F.2d at 287.

In a similar case in this district, another court has reached the opposite conclusion. *Gale v. U. S.*, 491 F.Supp. 574 (D.S.C.1980), involved a plaintiff who had been assaulted and raped by an off-duty Marine Gunnery Sergeant. The plaintiffs, the victim and her husband, contended that the injuries sustained by them were proximately caused by the government's negligence in its administration of medical treatment to and supervision of the Marine. Judge Hawkins declined to grant the government's motion to dismiss on the ground that negligence was the essence of plaintiff's case.

The *Gale* court undertook an extensive and thorough analysis of a number of cases, many of them the same opinions cited herein. Major reliance was placed upon the *Panella* decision. Although that case involved an assault by a non-government employee, the court in *Gale* found that *Panella* supported its theory that the exclusion of § 2680(h) should not apply to situations where a private employer in an analogous situation could not be held liable for an assault on a third party. Examples are where the assaulter is not an employee, or where the employee is acting outside his scope of employment. Judge Hawkins found that the *Panella* court clearly distinguished between claims based solely on a *respondeat superior* theory and those arising out of the direct negligence of government employees. Because under a *respondeat superior* theory the government could not have been liable for the Marine's off-duty act, the *Gale* court reasoned that the exclusion provided in § 2680(h) did not apply.

It is important to understand that this Court is not absolutely bound by Judge Hawkins' determination in *Gale*. While his opinion may be highly persuasive on the issue, a District Court decision "which has not stood the acid test of appellate review cannot be regarded as authoritative, much less dispositive . . . ." *Bank of Marin v.*

*England,* 352 F.2d 186, 189, n.1 (9th Cir. 1965), *reversed on other grounds,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). District Courts are often called upon to decide important questions of law for which there is no precedent in their jurisdiction. In the interest of uniformity of decision, when one of this Court's members decides a new legal question after thorough consideration, the other judges give great weight to the decision until the Fourth Circuit authoritatively decides the issue another way. But this Court is not bound by the decisions of its fellow members, and is free to reject their reasoning should it feel justice is better served thereby. *See, e. g., Childers v. Southern Farm Bureau Cas. Ins. Co.,* 282 F.Supp. 866 (D.Ark.1968). This Court respectfully refuses to follow the decision of the *Gale* court.

The plaintiff claims that the defendant is collaterally estopped by *Gale* and contends that the issue is *res judicata* in this district. Plaintiff misunderstands these two related principles; they simply do not apply in this case. While the term "*res judicata* in its broadest sense encompasses collateral estoppel, in a narrower sense these two phrases do carry different although related meanings. Under the principles of "*res judicata*" in the narrower sense, a judgment in a prior suit between the same parties bars a suit on the same cause of action not only as to all matters offered at the first proceeding, but also as to all issues that could have been litigated. Collateral estoppel, however, precludes relitigation only of those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action. *Johnson v. U. S.,* 576 F.2d 606 (5th Cir. 1978). *See* Black's Law Dictionary, at 237 and 1174 (5th Ed. 1979). Plaintiff cites *Johnson, supra,* but fails to recognize the significance of the fact that *Gale* and the instant action involve different plaintiffs. That the same parties are involved is a prerequisite to any application of either *res judicata* or collateral estoppel.

The defendant's motion to dismiss must be granted. The clear implication of *Panella* and its progeny is that because the fatal assault was perpetrated by a government employee, the action is barred. This Court has no jurisdiction to proceed in this matter, and the action is therefore dismissed.

AND IT IS SO ORDERED.