**SHEARER, Louise, Ind. and as Administratrix of the Estate of Shearer, Vernon, Deceased, Appellant,**

v.

**UNITED STATES of America c/o Peter F. Vaira, U.S. Attorney, Appellee.**

No. 83–1089.

United States Court of Appeals, Third Circuit.

Argued Oct. 24, 1983.

Decided Dec. 19, 1983.

As Amended Jan. 20, 1984.

Rehearing and Rehearing En Banc Denied March 7, 1984.

---

William T. Cannon (argued), Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Philadelphia, Pa., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Margaret L. Hutchinson, Asst. U.S. Atty. (argued), Philadelphia, Pa., for appellee.

Before GIBBONS, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Once again, we are asked to decide the rights of a serviceman who, while on autho-

rized leave and off base, suffered a fatal injury because of, *inter alia,* the alleged negligence of persons within the command hierarchy of the United States Army ("Army"). We are confronted with the traditional defenses of the *Feres*[1] doctrine and a claim of the inapplicability of the Federal Tort Claims Act.

Plaintiff-appellant Louise Shearer brought this action against defendant-appellee, the United States, under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. Sections 1346(b), 2671–2680, claiming that the negligence of the Army caused the murder of her son Private Vernon Shearer. Relying on the *Feres* doctrine, the district court granted the government's motion for summary judgment. Appellant challenges the district court's decision presenting two issues for consideration on this appeal: whether either the *Feres* doctrine or the intentional tort exception to the FTCA bars appellant's action.

We hold that neither the *Feres* doctrine nor the intentional tort exception to the FTCA bars appellant's claim. We therefore will reverse the district court's order granting summary judgment to the United States and will remand this case to the district court.

### I.

For the purposes of this appeal, we must accept as true the following facts pleaded by appellant—the party against whom summary judgment has been ordered: the decedent, Vernon Shearer, was an eighteen-year old private in the Army stationed at Fort Bliss, Texas. Having been in the Army barely four months, on June 2, 1979, while off the military reservation on an authorized leave from his unit, Shearer was "kidnapped at point of gun and shot to death"

in New Mexico by Private Andrew Heard. Heard was also off-duty.[2] Three years before, while stationed in Germany, Heard also had been prosecuted for what was alleged to be a gruesome murder of a German woman. The indictment alleged that he had "inflicted serious head injuries on the 38-year-old Margarete Hess on the occasion of sexual actions by means of a wrench and a lifting jack." Appendix ("App.") at 13a. Heard served three years of a four year sentence in Germany. His attack on Shearer occurred less than four months after his release from prison for the murder of Margarete Hess.

At the time of the kidnapping and murder of Shearer, the Army was well aware of Heard's record of violence, but had disregarded three of Heard's superiors who recommended that "Heard be eliminated from the Service under Chapter 14, Army Regulations 635–200." App. at 14a. His Battalion Commander in Germany, Lieutenant Colonel Rayburn C. Storvall, on December 7, 1978 had declared that "Private Heard is unsuitable for military service as his record discloses." *Id.* at 15a. That same day Lieutenant Colonel Storvall's recommendation was adopted by two other superiors of Heard, Colonel Donald E. Eckelbarger and Brigadier General Charles E. Canidy. Indeed, once Colonel Eckelbarger wrote that Heard's discharge "would be in the best interest of Private Heard and the United States Army." *Id.*

Despite the precise and unequivocal recommendations, the Army failed to make a "final determination" on Heard's discharge. More important, not until after Heard had murdered Shearer did the Army even bother to conduct a mental evaluation of Heard. *Id.*

---

1. *Feres v. U.S.,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The *Feres* doctrine has been subjected to severe criticism by some commentators. *See* Tort Remedies for Servicemen Injured by Military Equipment: A Case for Federal Common Law, 55 N.Y.U.L.Rev. 601, 629–35, 631 n. 173 (1980); Note, From *Feres* to *Stencel:* Should Military Personnel Have Access to FTCA Recovery? 77 Mich.L.Rev. 1099,

1102–21 (1979). Nonetheless, the Supreme Court has indicated no desire to reconsider this judicially created doctrine.

2. In a separate action Heard pleaded *nolo contendere* to the crime of "second degree murder and firearm enhancement." Appendix ("App.") at 16a.

Appellant argued that the Army was negligent in failing to discharge Heard from the Army, in failing to warn other enlisted personnel of Heard's violent propensities, and in failing to restrict Heard. Appellant's arguments concluded that the Army's failure in these regards proximately caused Shearer's death.

The United States responded to appellant's allegations by moving to dismiss Shearer's complaint on two grounds: Shearer's injury was "incident to military service" and therefore barred under the *Feres* doctrine. In the alternative, the United States argued that appellant's claim was one "arising out of assault and battery" and thus barred by the intentional tort exception of the FTCA.

The district court granted the United States' motion for summary judgment based on the *Feres* doctrine. The court did not decide the issue of the intentional tort exception to the FTCA.

## II.

■ The FTCA permits suits against the United States for the "negligent or wrongful act" of a government employee. 28 U.S.C. §§ 1346, 2674. The scope of the FTCA, as it applies to the military, has been narrowed in a series of decisions which together comprise the *Feres* doctrine. The thrust of the *Feres* doctrine prevents an action against the government for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *U.S. v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954); *Feres v. U.S.,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950); *Jaffee v. U.S.,* 663 F.2d 1226, 1227 (3d Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); *See Brooks v. U.S.,* 337 U.S. 49, 52, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949).

The principle underlying this judicially created exemption is that the FTCA mandates minimum judicial interference with the "peculiar and special relationship of the soldier to his superiors...." *Stencel Aero Engineering Corp. v. U.S.,* 431 U.S. 666, 671,

97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1977); *U.S. v. Brown,* 348 U.S. at 112, 75 S.Ct. at 143. Accordingly, *Feres* insulates the military from FTCA suits arising out of "negligent orders given or negligent acts committed in the course of" an injured serviceman's military duty. *Stencel Aero Engineering Corp. v. U.S.,* 431 U.S. at 671, 97 S.Ct. at 2057; *U.S. v. Brown,* 348 U.S. at 112, 75 S.Ct. at 143. The pivotal question under the *Feres* analysis is whether the serviceman sustained the injury either in the "course of" or "incident to" his military service. *U.S. v. Brown,* 348 U.S. at 112, 75 S.Ct. at 143; *Feres v. U.S.,* 340 U.S. at 146, 71 S.Ct. at 159; *Jaffee v. U.S.,* 663 F.2d at 1233.

These terms "in the course of" and "incident to," however, are not self-evident truths that leap out to illuminate any factual situation. Consequently, courts must probe beneath these conclusionary statements and must identify more specific facts to determine whether an injury or death was sustained in the "course of" or "incident to" one's military service. Application of the doctrine focuses on the relationship between the serviceman and the military at the time and place the injury was sustained. The status and activity of the injured serviceman often seem to be the controlling factors.

■ The important distinguishing factors accounting for the different outcomes in these two cases are: the status of the injured soldier at the time of injury, the place of the injury, and the nature of the activity engaged in, and whether the injured party was acting under orders or compulsion. These factors control *Feres* doctrine cases. *U.S. v. Brown,* 348 U.S. at 112, 75 S.Ct. at 143; *Feres v. U.S.,* 340 U.S. at 146, 71 S.Ct. at 159; *Jaffee v. U.S.,* 663 F.2d at 1232. *See Parker v. U.S.,* 611 F.2d 1007, 1013–15 (5th Cir.1980); *Woodside v. U.S.,* 606 F.2d 134, 138–42 (6th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *Harten v. Coons,* 502 F.2d 1363, 1365 (10th Cir.1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975).

■ Generally, an off-duty serviceman not on the military base and not engaged in military activity at the time of injury, can recover under FTCA; an on-duty serviceman, however, is usually barred from recovery. In *Brooks,* an off-duty serviceman hit by a military vehicle while he was engaged in personal business recovered under FTCA. *U.S. v. Brooks,* 337 U.S. at 50–52, 69 S.Ct. at 919–920. In *Feres,* on the other hand, an on-duty serviceman killed in an on-base fire was barred from recovery. *Feres v. U.S.,* 340 U.S. at 136–38, 146, 71 S.Ct. at 154–55, 159.

In this case, appellant argues that the district court improperly applied the *Feres* doctrine to their claim. Specifically, they argue that the court neglected to focus on Shearer's activity and status at the time and place of his injury. On review, the record indicates that Shearer was not engaged in or acting incident to any military activity at the time of his murder. To the contrary, Shearer was on leave in another state (New Mexico) when he was kidnapped. The United States does not dispute that Shearer was on authorized leave and off the base at the time of his murder.

The district court's error stems from its singular focus on the status and activity of the allegedly negligent parties (i.e. Heard's superior officers) without considering the status and activity of the injured party. Consequently, the district court improperly concluded that appellant's "allegations relate directly to decisions of military personnel made in the course of the performance of their military duty and, therefore are barred." App. at 25a.

In support of its conclusion, the district court erroneously relied on *Johnson v. U.S.,* 631 F.2d 34, 36–37 (5th Cir.1980) and *Henning v. U.S.,* 446 F.2d 774, 777 (3d Cir.1971). These two cases did not adopt a tortfeasor status-activity analysis as the lower court suggested. Instead these cases merely restated a basic *Feres* doctrine rule: Malpractice to an active duty soldier in an army

hospital is, by its very nature, considered activity "incident to military service," and therefore barred under *Feres.*[3] Both *Johnson* and *Henning* concerned injuries to servicemen allegedly stemming from their medical treatment in Army hospitals. Although receiving medical treatment in military hospitals may be considered an activity and benefit "incident to military service" and therefore barred under *Feres,* certainly *being kidnapped* off base at gun point can never be perceived as one of the activities or anticipated free benefits of being in the armed services. Thus, there is no legitimate basis on which *Feres* can bar appellant's claim.

For these reasons, we reverse the district court on this issue.

### III.

The United States offers a separate ground, the intentional tort exception to the FTCA, as an independent basis to uphold the district court's summary judgment. The FTCA does not provide recovery for the intentional tort of assault and battery. Section 2680(h) of the Act carves out an intentional tort exception: "The provisions of this chapter and Section 1346(b) shall not apply to ... (h) [a]ny claim arising out of assault [and] battery ...." 28 U.S.C. § 2680(h).

The United States argues that appellant's wrongful death claim falls within the intentional tort exception because it "arises out of" the assault and battery committed by Heard. Appellant disagrees, arguing instead that this action "arises out of" military negligence which proximately caused Shearer's death.

■ The FTCA does not necessarily bar a cause of action in negligence, even if the injury is directly caused by the assault and battery of a government employee. The FTCA simply requires that the intentional tort must "have its roots in government negligence," *Gibson v. U.S.,* 457 F.2d

---

**3.** *See Feres'* two companion cases, *Jefferson v. U.S.,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and *U.S. v. Griggs,* 340 U.S. 135, 71 S.Ct.

153, 95 L.Ed. 152 (1950); *See Harten v. Coons,* 502 F.2d at 1365 n. 6; *Lowe v. U.S.,* 440 F.2d 452–53 (5th Cir.1971).

1391, 1395–97 (3d Cir.1972); *Underwood v. U.S.,* 356 F.2d 92, 99–100 (5th Cir.1966). Recovery under this exception could thus be barred if the negligence was a remote cause of the injury, or if the plaintiff, through artful pleadings with conclusionary allegations, attempts to create a negligence issue. *Gibson v. U.S.,* 457 F.2d at 1395–96. *See also Hughes v. Sullivan,* 514 F.Supp. 667, 669–70 (E.D.Va.1980), *aff'd sub nom., Hughes v. U.S.,* 662 F.2d 219, 220 (4th Cir. 1981); *Naisbitt v. U.S.,* 611 F.2d 1350, 1354–55 (10th Cir.1980); *U.S. v. Shively,* 345 F.2d 294, 296–97 (5th Cir.1965).

■ In order to withstand dismissal of a suit under the intentional tort exception to the FTCA, a plaintiff must allege sufficient facts which, if proven, would demonstrate that the government should have reasonably anticipated that one of their employees would commit an intentional tort. *U.S. v. Shively,* 345 F.2d at 296. For example, if an assault and battery occurred as a "natural result" of the government's failure to exercise due care, the assault and battery may be deemed to have its roots in negligence and therefore it is within the scope of the FTCA. *Id.; Gibson v. U.S.,* 457 F.2d at 1395–96.

■ In bringing a claim, however, a plaintiff cannot merely point to an assault and battery and then claim, based simply on the occurrence of the intentional tort, that the government was negligent for not having had anticipated the offensive action. *See Naisbitt v. U.S.,* 611 F.2d at 1356; *Gibson v. U.S.,* 457 F.2d at 1395–96. The plaintiff must allege sufficient independent facts to demonstrate that the government knew or should have known that the employee was dangerous prior to the injurious act. *Gibson v. U.S.,* 457 F.2d at 1395–96; *Underwood v. U.S.,* 356 F.2d at 99–100.

In *Gibson v. U.S., supra,* 457 F.2d at 1395, a government employee assaulted another employee. The district court's summary judgment order dismissing plaintiff's FTCA claim, was reversed on appeal. The court of appeals held that the intentional tort exception to the FTCA did not necessarily bar a negligence action against the govern-ment, even if the immediate cause of plaintiff's injury was an assault and battery. It reasoned that because the government knew that the assailants' class of employees were "dangerously sick," and because the government "failed to take reasonable measures" to insure plaintiff's safety, "[t]he attack ... was a foreseeable consequence of the government's failure to exercise due care... [I]t is not such an intervening act as will sever the necessary casual relation between the negligence and the appellant's injuries." *Gibson v. U.S.,* 457 F.2d at 1395. *Accord Underwood v. U.S.,* 356 F.2d at 99–100.

■ Similarly, in this case, appellant alleges specific facts indicating government knowledge of Heard's violent propensities. The following facts are critical: Heard had been convicted and imprisoned for killing a civilian while in the Army. He was released from the prison less than four months prior to killing Shearer. Several months before Shearer was murdered, high-ranking military officers, aware of Heard's violent disposition, recommended his discharge. Nevertheless, Heard remained in the Army and was treated as a member in good standing. Despite Heard's previous murder and the Army's knowledge of his disposition, enlisted men, including Shearer, were not warned about his violent past or present disposition. We believe these alleged facts are sufficient to withstand a summary judgment motion based on the intentional tort exception to the FTCA.

The United States relies on *Naisbitt v. U.S.,* 611 F.2d 1350 (10th Cir.1980), to support its motion to dismiss under the intentional tort exception. This reliance is misplaced.

*Naisbitt* concerned the dismissal of a suit under the intentional tort exception to the FTCA where the alleged negligence was based on mere conclusionary allegations. There, two off-duty air force servicemen committed a number of rapes and murders, but the plaintiff's complaint failed to assert any facts suggesting that the government knew or should have known either of the

prior violent actions by the assailants or of the assailant's potential violence. *Naisbitt v. U.S.,* 611 F.2d at 1356; *Naisbitt v. U.S.,* 469 F.Supp. 421, 422–23 (D.Utah 1979).

In this case, appellant's allegations, if proven, would permit a court to find that the government's negligence proximately caused Shearer's injury, thus, this case falls closer to the rubric of *Gibson* facts, not to that of *Naisbitt.* We therefore reject the United States' contention that summary judgment was justified under Section 2860(h), the intentional tort exception.

We will therefore reverse the judgment of dismissal of the district court and remand this case for further proceedings consistent with this opinion.

GARTH, Circuit Judge, dissenting:

The majority holds that neither *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), nor the intentional torts exception to the Federal Tort Claims Act [FTCA], 28 U.S.C. § 2680(h) (1976), bars Shearer's cause of action. I cannot agree that Shearer has stated a cause of action that is not barred by *Feres* and by section 2680(h), and which would require a trial. Thus, I dissent from the majority's holding to that effect.

### I.

Under the majority's analysis, for Shearer to recover in the face of *Feres* and section 2680(h), it must be demonstrated that her cause of action sounds in negligence, because a showing of negligence is required under *Feres* and the FTCA, as a predicate to recovery. In my opinion, the circumstances of Shearer's case, however analyzed, cannot surmount the *Feres* hurdle.[1] However, even if *Feres* were not to bar Shearer's action as I believe it unquestionably does, Shearer still cannot escape the provision of the FTCA that bars claims arising out of an intentional tort—in this case, an assault and battery. *See* 28 U.S.C. § 2680(h).

Her complaint, although appearing on the surface to charge negligence is, in truth, no more than a complaint seeking monetary recovery for an assault and battery perpetrated by a fellow soldier upon her son. Congress, however, has refused to permit recovery against the Government for such intentional actions. It is for this reason that plaintiffs like Mrs. Shearer, with claims that are otherwise barred, have sought to overcome the obstacle of *Feres* and 2680(h), by framing their complaints in terms of the Government's alleged breach of duty, rather than in the substantively correct terms of an intentional tort. They have done so in order to provide the necessary predicate of a negligence cause of action.

Even a cursory review of recent case law involving the issue presented here, reveals that "negligence" claims such as Shearer asserts have been filed with greater and greater frequency. *See, e.g.,* cases collected in *Lambertson v. United States,* 528 F.2d 441, 444 (2d Cir.1976); *see also Wine v. United States,* 705 F.2d 366, 366–67 (10th Cir.1983); *Hughes v. Sullivan,* 662 F.2d 219

---

1. While I agree that the courts that have employed a *Feres* analysis have reached results that do not always appear logical or consistent, it is not necessary for me to address *Feres* in the circumstances here presented. As my subsequent discussion reveals, I do not believe any bona fide negligence claim has been framed by Shearer, nor do I believe that the decision respecting Heard's discharge can be characterized as other than a military decision committed to the command function of the Army. I note, moreover, that the Government has relied heavily on *Henning v. United States,* 446 F.2d 774 (3d Cir.1971), a case decided by this court, which held that the proper inquiry to be made when negligence is alleged is an inquiry directed to the time and place of the alleged negligence. In this case, the time and place of the alleged negligence was some months prior to Shearer's induction in the Army and took place in Germany. *See* note 5 *supra.* The majority opinion apparently does not recognize this doctrine, for rather than giving it effect, the opinion addresses the time and place that the injury was *sustained. See* Maj.Op. Typescript at 6, 8. However, any further discussion of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), would be meaningless because, as noted, the FTCA requires a legitimate cause of action sounding in negligence in order to recover against the Government. I therefore limit my discussion to section 2680(h).

(4th Cir.1981), *aff'g* 514 F.Supp. 667, 669–70 (E.D.Va.1980); *Naisbitt v. United States,* 611 F.2d 1350, 1353–56 (10th Cir.1980), *cert. denied* 449 U.S. 885, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980); *Taylor v. United States,* 513 F.Supp. 647 (D.S.C.1981); *Davidson v. Kane,* 337 F.Supp. 922, 923 (E.D.Va.1972); *United States v. Shively,* 345 F.2d 294, 296–97 (5th Cir.1965). A pattern has apparently developed by which the true nature (intentional tort) •of a claimant's cause of action against the Government is subordinated to a purported cause of action sounding in negligence. The effort in these cases is an obvious attempt to escape the consequences of the Supreme Court's decision in *Feres* and Congress' determination to limit the Government's tort liability. *See* 28 U.S.C. § 2680. Prior to today, this court has yet to confront this problem directly, although we have approached the issue tangentially in *Gibson v. United States,* 457 F.2d 1391 (3d Cir.1972), which I discuss in this dissent.

Because I believe (1) that it is important to implement the legislative command of Congress and to thus put this issue to rest once and for all (*compare Bryson v. United States,* 463 F.Supp. 908 (E.D.Pa.1978) *with Collins v. United States,* 259 F.Supp. 363 (E.D.Pa.1966), and (2) because I believe that the majority's analysis is incompatible with the better-reasoned analyses of other Courts of Appeals, *see* typescript at 7–11, *infra,* thereby leading to still another conflict among these Courts, and (3) because I believe that the constantly recurring claims under *Feres* and the FTCA require some degree of jurisprudential consistency in this court, to say nothing of consistency with decisions of other Courts of Appeal, I find it necessary to dissent.

**2.** At oral argument, Shearer's counsel limited the grounds of alleged negligence to these two aspects, even though Shearer's Proposed Amended Complaint charges in paragraph 41 that "[t]he United States Government ... failed to warn other persons that he [Heard] was at large, and of the danger which he presented." App. 17a.

## II.

Section 2680(h) of Title 28 provides that the provisions of the FTCA shall not apply to "any claim *arising out* of assault, battery, * * *." (Emphasis added). Because the Government has not consented to be sued for such a tort, a federal court is therefore without jurisdiction to entertain any suit which arises out of an assault and battery. Thus, if the claim being pressed by Shearer sounds not in negligence but in assault and battery, then it unquestionably must be barred by this statutory exception to federal liability under the FTCA.

Mrs. Shearer, of course, stresses that her cause of action is not concerned with the attack upon her son by Heard, an attack that resulted in her son's death. Rather she claims that her cause of action is focused upon the negligence of the Government in not discharging Heard or otherwise supervising him adequately.[2] The Government responds, however, that the negligence claim is just a cloak for what is really an assault and battery claim at heart. Because I believe that realistically, logically, and precedentially, the Government's characterization and understanding of Shearer's cause of action is correct, I would find Mrs. Shearer's claim to be barred by section 2680(h).

### A.

By far the greater number of courts that have dealt with claims similar to this one have found section 2680(h) to bar liability. In one of the first such cases, *Collins v. United States,* 259 F.Supp. 363 (E.D.Pa. 1966),[3] Judge Joseph S. Lord, III, said:

It is true that the claim here is predicated on negligence. However, that negligence would have been without legal

**3.** In *Collins v. United States,* 259 F.Supp. 363 (E.D.Pa.1966), a Post Office employee, "acting in the scope of his employment, 'pushed, hit and struck' the plaintiff." *Id.* at 364. The complaint alleged that the Government was negligent in hiring and retaining the employee "when it knew or should have known of his 'violent, vicious and malicious propensities.' " *Id.* The Government's motion to dismiss based on section 2680(h) was granted.

significance absent the alleged act of Brosz. Without that, there would have been no actionable negligence. It was the attack which served to attach legal consequences to defendant's alleged negligence. Congress could easily have excepted claims *for* assault. It did not; it used the broader language excepting claims *arising out of* assault. It is plain that the claim arose only because of the assault and battery, and equally plain that it is a claim arising out of the assault and battery. This being so, the United States has not waived its immunity as respects this claim.

*Id.* at 364. Other courts have reached the same conclusion when faced with a purported negligence claim that followed an intentional tort such as assault and battery. *See, e.g., Wine v. United States,* 705 F.2d 366, 366–67 (10th Cir.1983); *Hughes v. U.S.,* 662 F.2d 219 (4th Cir.1981), *aff'g* 514 F.Supp. 667, 669–70 (E.D.Va.1980); *Naisbitt v. United States,* 611 F.2d 1350, 1353–56 (10th Cir.1980), *cert. denied* 449 U.S. 885, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980); *Taylor v. United States,* 513 F.Supp. 647 (D.S.C. 1981); *Davidson v. Kane,* 337 F.Supp. 922, 923 (E.D.Va.1972). These cases remind us that, when we are called upon to decide whether the exception for intentional torts is applicable, we must look not to the theory that the plaintiff may have selected. Rather, "the decisive factor is whether, *in substance and essence,* the claim arises out of an assault and battery." *Nichols v. United States,* 236 F.Supp. 260, 263 (N.D.Miss. 1964), quoted in *Coffey v. United States,* 387 F.Supp. 539, 540 (D.Conn.1975) (emphasis added).

An examination of the *Naisbitt* case from the Tenth Circuit and the *Hughes* case from the Fourth Circuit reveals what I believe to be the proper analysis and thus the proper disposition of a case such as the one before us.

In *Naisbitt, supra,* two off-duty members of the United States Air Force entered a privately-owned retail store in Ogden, Utah, and "committed a variety of atrocious acts including assault, rapes, batteries and murders against the plaintiffs and the plaintiffs' decedents. Five persons were shot and three were killed." 611 F.2d at 1351. The plaintiffs based their case on the theory that "the United States was guilty of actionable negligence in failing to supervise and curtail the two airmen in question in that it was reasonably foreseeable that they would, unless restrained, perpetrate serious injuries." *Id.* The district court granted the Government's motion to dismiss on the ground that the claim actually arose from assaults and batteries and was therefore barred by section 2680(h), the intentional tort exception. *See* 469 F.Supp. 421, 423 (D.Utah 1979). That court found that the negligence theory was "merely an alternative theory of liability." *Id.*

The Tenth Circuit affirmed the district court's holding, concluding that section 2680(h) barred the action then before it. After discussing the cases from other courts dealing with this problem, the Tenth Circuit stated:

> In summary: There is a strong thread running through most of these cases [and it] is that which recognizes the immunity of the government where the assailant is an employee of the government. This is applied regardless of whether the employee is on duty.... There is a dearth of authority allowing an action to be prosecuted against the government under the Tort Claims Act where the intervening assailant was an employee. In any case in which the employee has intentionally injured another, the tort asserted against the government, regardless of whether it is called negligence, is indeed an intentional tort attributable to the government.

611 F.2d at 1356.[4]

In *Hughes, supra,* a uniformed postal employee was arrested and charged with tak-

---

4. The Court went on to conclude:
   Finally, the particular facts of this case lead to the conclusion that the tort which is the basis of the lawsuit was intentional and subject to § 2680(h) because it was, as a matter of law, an intervening force of such great

ing indecent sexual liberties with a twelve-year-old girl in between mail routes. He pleaded guilty to a lesser charge and was ordered to submit to psychiatric treatment. Shortly thereafter, the girl's father personally requested of the employee's supervisor that the perpetrator be relieved of his postal duties, but the request was denied and the employee resumed his duties. Several years later, the same employee, while on his route, lured two other young girls into his postal truck and took indecent sexual liberties with them. Their mother brought suit against the United States, claiming that the postal supervisor acted negligently in failing to relieve the employee of his delivery duties after the first incident. The district court dismissed the suits on the ground that the claims, although sounding in negligence, actually arose out of the assaults and batteries committed by the postal employee, and that they were therefore barred by the intentional tort exception found in section 2680(h).

The Fourth Circuit affirmed that decision "for reasons adequately stated by the district court." 662 F.2d at 220. The district court had analyzed similar cases from other courts and had chosen to follow the lead of the Naisbitt court, saying:

> The alleged negligence of the government employee in retaining [the perpetrator] Sullivan was not the proximate cause of the assault. The proximate cause of the assault is the wilful and intentional act of Sullivan. . . . The basis of the negligence is that of Sullivan, not of the postmaster in retaining Sullivan in the service. True, the [complaint]

does allege that the United States had knowledge of indecent conduct on the part of Sullivan in 1974, but kept him in its employ, and refused a request of others to transfer Sullivan to another position; that the negligent keeping of him in his employment and the failure to transfer was the proximate cause of the assault. *But there would have been no assault except for the separate and independent acts of Sullivan. Without his independent assault, there would be no cause of action. It is to this action the statute does not waive immunity.*

Hughes, 514 F.Supp. 667, 670 (E.D.Va.1980) (emphasis added).[5]

The majority opinion, in holding that 28 U.S.C. § 2680(h) does not bar Shearer's claim, relies heavily on the Fifth Circuit case of *United States v. Shively,* 345 F.2d 294 (5th Cir.1965). I find this citation and the majority's reliance upon it puzzling. In *Shively,* Sergeant Lancaster, who was off-duty and in civilian clothes, was negligently issued a pistol by the non-commissioned officer in charge of the Arms Room. The issuance of a weapon under such circumstances was prohibited by both Army regulations and Army custom, and held by both the district court and the court of appeals to be negligent. Lancaster proceeded to shoot his recently divorced wife and kill himself. The Court of Appeals for the Fifth Circuit held that: (1) the intervening assault by Lancaster on his ex-wife, and not the negligent issuance of the weapon to him, was the sole proximate cause of the injury, 345 F.2d at 297, and (2) the injured ex-wife's claim "is a 'claim arising out of

magnitude that it rendered the negligence of the government in failing to control the assailants insignificant in comparison. The character of the act is so predominantly intentional that the negligence as a causal force is virtually nonexistent.
611 F.2d at 1356.

5. Indeed, there would have been no assault here except for the "separate and independent" act of Heard. Such an intervening act (here, the intentional assault and murder) has been held to be of such significance that even if the Army had initially been negligent, the subsequent act renders the negligence insignificant

as a causal force. *See Naisbitt,* 611 F.2d at 1356; *United States v. Shively,* 345 F.2d 294, 296–97 (5th Cir.1965). It should not go unmentioned that at the time that Heard was convicted and confined in Germany, leading to an Army officer's recommendation that he be discharged from the Service, Shearer had yet to join the Service. Shearer entered the Service on January 22, 1979 in Ft. Knox, Kentucky. Heard was released from Germany and transferred to the United States on February 3, 1979. Heard was not transferred to Ft. Bliss, Texas, until March 5, 1979. Shearer was not transferred to Ft. Bliss until May 5, 1979.

assault,' which is, in those words, specifically excepted from recovery under the Federal Tort Claims Act, 28 U.S.C. § 2680(h)."
*Id.*

Thus, *Shively* holds that, where the intervening act was the cause of the injury—as was the case here—even if negligence has been alleged, the claim, because it arises out of the shooting or assault, is excepted from recovery. Hence, *Naisbitt, Hughes,* and *Shively* are completely consistent in their analysis and holdings that section 2680(h) bars any recovery of damages for claims arising out of an intentional assault.

### B.

The analysis in *Naisbitt, Hughes,* and *Shively* finds support in this court as well. In a case decided under a *Feres* analysis, Judge Rosenn, writing for our court, took great pains to distinguish the circumstances that occurred in *Gibson v. United States,* 457 F.2d 1391 (3d Cir.1972), from the circumstances present in *Naisbitt* and *Hughes.* In so doing, he explained why the exception found in 28 U.S.C. § 2680(h) did not bar Gibson's recovery but would bar recovery by an individual such as Shearer who was the victim of an assault and battery.

Gibson had been hired by the Federal Electric Co. to train Job Corps enrollees at the Raritan Arsenal in New Jersey. On November 5, a Job Corps enrollee (Jessie, a juvenile delinquent with a known addiction to narcotics), while under the influence of narcotics and while employed by the United States, "plunged a screwdriver through the appellant's temple while the latter was engaged in the performance of his duties as a Job Corps leader and instructor." *Id.* at 1393. In addition, Gibson alleged that there had been other incidents at the Arsenal and that the supervising federal office was aware of the dangerous situation. This court held:

First, the attack upon Gibson was a foreseeable consequence of the Government's failure to exercise due care *under the circumstances* and, therefore, it *is not such an intervening act as will sever the necessary causal relation between the negligence and the appellant's injuries.*

Here, the very risk which constitutes the defendant's negligence is the probability of such action. It is clear that when such action occurs, it should not insulate the defendant's negligence under the causation formula. In other words, it is clearly unsound to afford immunity to a negligent defendant because the intervening force, the very anticipation of which made his conduct negligent, has brought about the expected harm.

*Id.* at 1395 (footnote omitted). In distinguishing the *Gibson* situation from the *Collins* situation, Judge Rosenn wrote:

[*Collins*] is the classic case of an intentional assault and battery except for the conclusory allegation that the Government knew or should have known the postal clerk had "malicious propensities." This conclusory statement, however, is based upon the very assault for which the action is brought. In this case, we are concerned with trainees who are drug addicts and have behavioral problems, under the care of the Government in a controlled environment and program designed to rehabilitate them. *The Government accepted the duty of caring for and controlling them knowing of their drug addiction and instability. It was obliged to exercise reasonable care to prevent them from harming others.*

*Id.* (emphasis added).[6]

Here the record discloses that the circumstances surrounding Shearer's unfortunate

---

**6.** *See also Loritts v. United States,* 489 F.Supp. 1030, 1031–32 (D.Mass.1980) (rape of choral member on West Point campus by Government employee attributable to negligence of Government in not providing adequate protection for invited guest); *Bryson v. United States,* 463 F.Supp. 908, 912 (E.D.Pa.1978) (alleged negligence of United States Army in failing to re-

move soldier which resulted in death of Army private at hands of fellow serviceman held to state a cause of action in negligence).

Neither *Loritts* nor *Bryson* affect the analysis which I advocate here. In *Loritts,* the district court expressly found that the Academy had voluntarily undertaken the task of providing escorts to the choral group, and having as-

death come well within the exception of section 2680(h), as that exception is explained in the *Gibson* opinion. Heard was not known to have a medical or behavioral problem such as an addiction to mind-controlling drugs. All that was known was that Heard had committed a single crime—albeit the serious crime of manslaughter—in Germany. He had been sentenced to and had already served a period of incarceration in Germany. Heard was not part of a Government rehabilitation program. The Government never accepted the duty to care for or control him in a "controlled environment" or "rehabilitation program." Therefore, the Government could not be found to have accepted any special obligation to exercise reasonable care with regard to preventing Heard from harming Shearer or anyone else. *See* note 5 *supra*.

Based on these critical factual distinctions, I find the rationale of *Naisbitt, Hughes, Shively* and *Gibson* (distinguishing *Collins*), as well as the other cases that proceed in a similar vein, to be exceedingly persuasive. The distressing event that gave rise to the chain of events culminating in this lawsuit was the heinous murder committed by Andrew Heard. For this crime Heard has been sentenced to prison for a term of fifteen to fifty-five years. I recognize that often the punishment received by a convicted criminal provides little solace or compensation to the victims of the crime. Yet, this unfortunate result still does not automatically convert what is essentially a cause of action for assault and battery into a cause of action for negligence against the perpetrator's employer.

I am aware that when the employer is the United States Government, that result is even more unfortunate because Congress has seen fit to limit the federal government's tort liability so as to completely exclude liability arising out of intentional torts which are committed by Government employees. *See* 28 U.S.C. § 2680(h) (1976). However, the merits of the exceptions to the Federal Tort Claims Act,[7] like the merits of the *Feres* doctrine, are not at issue before this court. What is before us is a cause of action framed in terms of negligence, which is, in my opinion, nothing more than a subterfuge for an intentional assault and battery claim that is barred as such under the FTCA. As Judge Van Graafeiland said, writing for the Second Circuit, in *Lambertson v. United States,* 528 F.2d 441, 444 (2d Cir.1976), "[t]o say that plaintiff's claim was not one 'arising out of' a battery would be to blink at the exclusionary provisions of § 2680." After listing a collection of cases in which plaintiffs sought to avoid the intentional tort exclusions of section 2680(h) by claiming negligence, *id.,* Judge Van Graafeiland continued: "[T]o permit plaintiff to recover by 'dressing up the substance' of battery in the 'garments' of negligence would be to 'judicially admit at the back door that which has been legislatively turned away at the front door.'" *Id.* at 445, quoting *Laird v. Nelms,* 406 U.S. 797, 802, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972).

sumed that responsibility, its failure to carry out that obligation subjected the Government to liability. Indeed, the district court, acknowledging those cases which seek to circumvent section 2680(h) by artful pleading, addressed that very issue and found that such was not the situation in *Loritts'* case.

Similarly, *Bryson* is not persuasive because it failed to analyze the Government's section 2680(h) contention other than to refer to *Gibson v. United States,* 457 F.2d 1391 (3d Cir. 1972), in a non-analytic fashion and, indeed, in my opinion, to misread the critical distinction made in *Gibson* and referred to in text above. In addition, *Bryson* concentrated on *Feres* rather than on 28 U.S.C. § 2680(h) in permitting recovery against the Government. I believe

that the *Feres* analysis in *Bryson* is as flawed as its conclusory holding with regard to section 2680(h).

7. The statute, 28 U.S.C. § 2680 (1976), excepts claims arising in or out of (a) discretionary functions, (b) postal matters, (c) tax collections or customs duty, (d) certain suits in admiralty, (e) administration of Title 50, sections 1–31, (f) quarantine established by the government, (h) intentional torts (the exception that is relevant in this case), (i) operations of the Treasury, (j) wartime activities, (k) a foreign country, (*l*) the activities of the Tennessee Valley Authority, (m) the activities of the Panama Canal Company, and (n) certain Federal banks.

Because I can discern no *bona fide* negligence claim on which Shearer predicated her cause of action, I have not addressed the *Feres* doctrine, *see* note 1 *supra;* and I would affirm the district court's judgment in favor of the Government on the ground that the exception to the FTCA, 29 U.S.C. § 2680(h), bars Shearer's action.[8]

Accordingly, I respectfully dissent.

---

**8.** Because the district court ruled in favor of the Government on the *Feres* doctrine, holding that *Feres* barred Shearer's claim, it did not reach, and therefore did not address, the exception to the FTCA found in 28 U.S.C. § 2680(h), which would bar a claim arising out of an assault and battery.