**Nora Faye JOHNSON,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 79–1485.

United States Court of Appeals,
Fifth Circuit.

Nov. 17, 1980.

Rehearing and Rehearing En Banc
Denied Jan. 6, 1981.

Gary B. Tullis, Charles H. Murchison, Jacksonville, Fla., for plaintiff–appellant.

Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for defendant–appellee.

Before KRAVITCH, HENDERSON and REAVLEY, Circuit Judges.

---

HENDERSON, Circuit Judge.

This is one of three suits stemming from the homicidal rampage of Sgt. Jimmy Ray Johnson. On this appeal we hold that Mrs. Johnson may not recover damages under the Federal Tort Claims Act for her husband's death.

In 1970 Sgt. Johnson was assigned to Fort Stewart, Georgia. In September of that year, Major Merideth, a psychiatrist at Fort Stewart, hospitalized him for a possible mental illness, and concluded he was suffering from a severe psychosis accompanied by homicidal and suicidal tendencies. Early in January, 1971 the sergeant was jailed on a warrant issued after he assaulted his wife. He was released on condition that he re–enter the post hospital, and he did so on January 11, 1971. Major Merideth discharged the sergeant on January 21, 1971, even though he knew of his violent tendencies.

On January 25, 1971, Johnson requested leave, which was denied by his captain for fear he would cause more trouble. Unfortunately, the battalion executive officer overruled the captain and granted the leave. On January 27, 1971, Sgt. Johnson went to the home of his wife's brother in Waynesville, Georgia, approximately 80 miles from Fort Stewart. When he arrived he killed his brother–in–law, Carroll Johns, shot his wife and then killed himself.[1]

Carroll Johns' widow brought suit against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C.A. §§ 2671 *et seq.* to recover for the wrongful death of her husband. Mrs. Johns alleged that the government was negligent in releasing Sgt. Johnson from the hospital and granting him leave. A bench trial resulted in a judgment in her favor. *Johns v. United States,* Civ. Action No. 769 (S.D. Ga., August 6, 1973). Meanwhile, Mrs. Johnson filed two suits against the government, both under the FTCA; one for her own injuries and one for the wrongful death of her husband. In the first appeal of these cases, a panel of this court held that the judgment in *Johns* was res judicata of the negligence issue in Mrs. Johnson's actions (*i. e.,* the government was negligent in releasing Sgt. Johnson). *Johnson v. United States,* 576 F.2d 606 (5th Cir. 1978). The United States accordingly stipulated negligence and that this negligence was the proximate cause of the shootings. Mrs. Johnson now appeals from the subsequent order dismissing the wrongful death action.[2] We affirm.

The FTCA provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C.A. § 2674. In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Court enunciated what has come to be known as the *Feres* doctrine, holding that the United States "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159, 95 L.Ed. at 161. The Court, disposing of three cases, held there could be no recovery for injuries resulting from a barracks fire or the negligence of army surgeons.

The Supreme Court affirmed the vitality of *Feres* in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 52 L.Ed.2d 665, 97 S.Ct. 2054 (1977). *Stencel* grew out of injuries sustained when a National Guardsman's life–support system malfunctioned during a flight emergency. The airman sued the manufacturer, Stencel, which sought indemnification against the United States for damages it might incur as a result of the incident. In determining whether the "well–established doctrine of *Feres*" controlled the case, the Court looked to its rationale, 431 U.S. at 670, 97 S.Ct. at 2057, 52 L.Ed.2d at 669, and found that three considerations explained the decision: First, "[t]he relationship between

---

1. The facts are set out more fully in the opinion from the previous appeal of this case. *Johnson v. United States,* 576 F.2d 606 (5th Cir. 1978).

2. In the companion case Mrs. Johnson recovered for her own injuries. That case is not now before us.

the Government and members of its Armed Forces is 'distinctively federal in character,'" 431 U.S. at 671, 97 S.Ct. at 2058, 52 L.Ed. at 670 (quoting *Feres*), and therefore should not be governed by state law (as are FTCA claims). Second, veterans benefits are the generous but exclusive remedy for injured soldiers. Third, in *some cases* immunity is necessary because of "[t]he peculiar and special relationship of a soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." 431 U.S. at 671–672, 97 S.Ct. at 2058, 52 L.Ed.2d at 670 (quoting *Brown*).

Viewing our situation in the light of *Feres*, as elucidated in *Stencel*, we believe that an FTCA recovery is barred. To the extent Sgt. Johnson's death is attributable to release from the hospital, the courts have consistently followed *Feres* and held that the medical care given servicemen in army hospitals is so entwined with the military relationship that a serviceman cannot bring an action under the FTCA for the negligent provision thereof. *Veillette v. United States*, 615 F.2d 505 (9th Cir. 1980); *Henning v. United States*, 446 F.2d 774 (3d Cir. 1971), *cert. denied*, 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972); *Shults v. United States*, 421 F.2d 170 (5th Cir. 1969). *But cf. Bankston v. United States*, 480 F.2d 495 (5th Cir. 1973) (jury issue on discharge at time of negligence). As to the negligence of the executive officer in granting Sgt. Johnson leave, there is surely no parallel in civilian life. To second–guess the decisions of officers in granting leave would interfere with "the peculiar and special relationship of the soldier to his superiors," *Brown*, 348 U.S. at 112, 75 S.Ct. at 142, 99 L.Ed. at 143, and "visit the Government with novel and unprecedented liabilities," *Feres*, 340 U.S. at 142, 71 S.Ct. at 157, 95 L.Ed. at 159.

Mrs. Johnson insists that there are situations where the government is responsible in an FTCA action for injuries incurred by a serviceman. While her contention is undoubtedly true, it will not avail her in this case. In *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the Court held there was an FTCA action for injuries sustained by two off–duty soldiers who were driving in a private vehicle on a public highway when they collided with a military truck. *Brooks* stands only for the proposition that servicemen can recover for injuries from "an accident which had nothing to do with [their] army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired." 337 U.S. at 52, 69 S.Ct. at 920, 93 L.Ed. at 1204. The Court explicitly refrained from deciding whether "an army surgeon's slip of hand" would be actionable, 337 U.S. at 52, 69 S.Ct. at 920, 93 L.Ed. at 1204; a reservation the Court noted and addressed in *Feres*, 340 U.S. at 137–138, 71 S.Ct. at 155, 95 L.Ed. at 156.

*United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 139 L.Ed. 139 (1954), the second case cited by the appellant, is inapposite because there the injury occurred after the termination of the plaintiff's military service. Brown was a veteran who sought to recover for negligent knee surgery performed in a Veterans Administration hospital. The Court concluded the case was "governed by *Brooks*, not by *Feres*. The injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline. The injury occurred after his discharge, while he enjoyed a civilian status." 348 U.S. at 112, 75 S.Ct. at 143, 99 L.Ed. at 143.

Mrs. Johnson's reliance on *Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980), is similarly misplaced. In *Parker* the court held that *Feres* did not preclude a serviceman's widow from recovering under the FTCA for her husband's wrongful death. The decedent, who was off duty and beginning leave, suffered fatal injuries when he was hit by a military vehicle while driving home in his private automobile. Denial of recovery to Mrs. Johnson for her husband's death is entirely consistent with *Parker*.

In *Parker*, as in *Brown* and *Brooks*, the soldier's injuries were not in any meaningful sense the result of his military service. Recovery was virtually mandated by *Brooks*, where, it will be recalled, soldiers were able to recover for injuries sustained in an off–base collision with a military vehicle. In *Parker* the injury occurred on base, however, and the court explained that this distinction was irrelevant, despite the fact that "[i]f the injury occurs on the base, it is more likely that the injured service member was engaged in activity incident to service." 611 F.2d at 1014. Accordingly, the court focused on the injured serviceman's duty status; not because it was dispositive (it was not, *Woodside v. United States*, 606 F.2d 134 (6th Cir. 1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980)) but to show that his death–to use the appellant's own words–"had no significant link to the armed forces and was remote to his military service, thereby rendering the *Feres* doctrine inapplicable." In this case, unlike *Parker*, all the government actions that resulted in Sgt. Johnson's death were directly, and substantially, related to his military service. Although the damage did not manifest itself until Johnson left the post, the negligent acts were incident to his service.

We conclude then that there can be no FTCA recovery for Sgt. Johnson's death. While at first blush this result may seem harsh, we note that Mrs. Johnson and her brother's family have recovered for their injuries, at least so much as they can be compensated. Upon further reflection we are satisfied that the sad outcome of this affair is not attributable to the law, but simply stems from the mad acts of a tormented man, which, as is all too often the case, caused everlasting grief to those closest to him.

The judgment of the district court is AFFIRMED.