**L. Ann WEST, as Mother and Administrator of the Estate of Lorri West, et al., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 83–1842.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1983.

Decided March 14, 1984.

Rehearing and Rehearing En Banc Granted June 25, 1984.*

* Judgment and opinion vacated.

Robert E. Nesemann, Hely, Royster, Voelker & Allen, Peoria, Ill., for plaintiffs-appellants.

L. Lee Smith, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Peoria, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and KELLEHER, Senior District Judge *.

CUDAHY, Circuit Judge.

■ This case concerns the application of the Federal Tort Claims Act to injuries suffered by children of members of the armed forces where those injuries are connected with a parent's military service. Under *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the government is not liable under the Federal Tort Claims Act for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." The complaint in the case before us alleges that a soldier's children were born with birth defects resulting from the Army's negligent mistyping of their father's blood in connection with his pre-induction physical examination. The district court concluded that the *Feres* doctrine barred the action and dismissed the complaint for lack of subject matter jurisdiction.[1] For the reasons stated below, we reverse and remand for further proceedings.

## I.

Because the district court dismissed the complaint for lack of subject matter jurisdiction, we take as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiffs. According to the complaint, Stanley West was inducted into the United States Army on January 15, 1971. Before his induction, Army doctors performed a physical examination which included the taking of a blood sample. After his induction, Stanley received his identification ("dog") tags which listed his blood type as "A-Negative." According to the complaint, Stanley's blood type is actually "A-Positive," and the Army was negligent in mistyping his blood.

In 1973, Stanley was discharged from the Army and married L. Ann West. Ann's blood type is "A-Negative." On March 21, 1979, Ann gave birth to twin daughters, Lindsay and Lorri. Both were born with birth defects resulting from the incompatibility between their parents' blood types. Despite extensive medical treatment, Lorri died when she was one week old. Lindsay survived, but she has required extensive medical treatment for her condition.

The theory of the complaint is that the Army's negligence in mistyping Stanley's blood at his pre-induction physical examination was a proximate cause of Lorri's death and Lindsay's injuries which resulted from the incompatibility between their parents' blood types. We emphasize that the record before us presents no issues concerning proximate cause, duty or the medical basis for the plaintiffs' claims. We intimate no views on the merits of the claim; we address here only the question of subject matter jurisdiction.

The Wests filed their complaint under the Federal Tort Claims Act. 28 U.S.C. § 1346 and §§ 2671–2680. Stanley and Ann were not physically injured by the Army's alleged negligence; their claims all derive from the injuries of their daughters.[2] The United States moved to dismiss

---

\* The Honorable Robert J. Kelleher, Senior District Judge for the Central District of California, is sitting by designation.

**1.** If the FTCA does not provide a remedy, the United States has sovereign immunity against this claim and the federal courts lack subject matter jurisdiction over the claim. *Broudy v. United States*, 661 F.2d 125, 127–28 (9th Cir.

1981); *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir.1981).

**2.** There are four counts in the complaint. In Count One, Ann West as administrator of Lorri's estate seeks damages for Lorri's pain and suffering before her death. In Count Two, Ann as administrator of Lorri's estate seeks damages for Lorri's wrongful death. In Count Three, Stanley and Ann as parents of Lindsay and

the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. The district court concluded that the daughters' alleged injuries arose out of or were incident to Stanley's military service and that subject matter jurisdiction was therefore lacking under the doctrine of *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).

## II.

■ In *Feres* the Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. The FTCA does not explicitly bar such actions for service-connected injuries, but the Supreme Court concluded that Congress had not intended to permit members of the armed forces to sue for such injuries. The Court acknowledged that it had few guides for its interpretation and suggested that if Congress disagreed, it could readily correct the problem. 340 U.S. at 138, 71 S.Ct. at 155. Congress has not amended the FTCA to permit such claims. In recent years the Court has reaffirmed *Feres* and expanded its scope to bar third-party claims for indemnification based upon injuries to service personnel. *See Chappell v. Wallace*, —— U.S. ——, ——, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983) (*Feres* doctrine is important protection for military discipline); *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977) (barring claims for indemnification).

Plaintiffs argue that *Feres* does not apply to this case because the alleged negligent conduct occurred before Stanley was inducted into the service and because the injuries to his daughters occurred after his

discharge. The government contends that the alleged negligent mistyping of Stanley's blood was incident to his military service and that the case therefore falls within the *Feres* doctrine. In our view, the alleged negligence was "incident" to Stanley's military service, but that conclusion does not bar these claims based on injuries to his daughters.

Several cases have addressed the *Feres* doctrine with regard to alleged negligence in pre-induction physical examinations. In *Joseph v. United States*, 505 F.2d 525 (7th Cir.1974); *Redmond v. United States*, 331 F.Supp. 1222 (N.D.Ill.1971); and *Healy v. United States*, 192 F.Supp. 325 (S.D.N.Y.), *aff'd*, 295 F.2d 958 (2d Cir.1961), plaintiffs alleged that military doctors negligently failed to diagnose physical conditions which should have disqualified the individuals from military service. In *Joseph* and *Healy*, the individuals went into basic training where the strenuous activities aggravated the conditions which should have disqualified them from service. While it was clear in both cases that the alleged negligence occurred before the individuals entered military service, the courts held that because the *injuries* occurred in basic training—obviously an essential part of military service—the *Feres* doctrine applied to bar the actions. Injuries to service personnel that occurred during basic training were incident to military service and thus squarely within the *Feres* holding. This court in *Joseph* suggested that the doctrine probably would not apply to malpractice which occurred in a pre-induction physical and which resulted in *immediate* injury. 505 F.2d at 526 n. 1. At the time of the pre-induction physical, the individual is still a civilian, and the *Feres* doctrine does not prohibit recovery by civilians injured by non-combatant military activity.[3]

---

Lorri seek damages for medical expenses and funeral expenses. Finally, in Count Four, Stanley and Ann as parents and guardians of Lindsay seek damages for Lindsay's pain and suffering, medical expenses and physical disabilities.

**3.** In *Redmond, supra,* the district court held that the Army's conduct in determining whether a soldier was qualified to serve was "inseparably intertwined" with the soldier's military service. 331 F.Supp. at 1224. That holding has been qualified, however, by this court's later decision in *Joseph*, 505 F.2d at 526 n. 1.

In this case, the alleged negligence may have occurred when Stanley was still a civilian. The mistyping of his blood might have occurred immediately, before his induction, or it might have occurred later when, for example, his dog tags may have been misprinted. However, in our view the appropriate inquiry is the broader question whether the Army's alleged negligence was "incident" to the service member's military service. We think that the allegedly negligent mistyping of Stanley's blood was incident to his military service. The purpose of the blood typing at the pre-induction physical is not to determine whether the person is fit for military service but is instead to provide information on dog tags and in personnel records for future medical treatment in the military. According to the complaint, Stanley did not learn the results of the blood typing until he was issued his dog tags in basic training. (If he had not been inducted, there would have been no reason for the Army to inform him of the results of the blood test.) According to the complaint, the Army's negligence was not completed until the Army issued Stanley his dog tags and thus negligently informed him of his blood type. Under these circumstances, therefore, the Army's alleged negligence was incident to Stanley's military service.

### III.

The more difficult issue in this appeal arises from the fact that it was Stanley's daughters, not Stanley, who were allegedly injured by the Army. The *Feres* holding was that the government is not liable under the FTCA "for injuries to *servicemen* where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159 (emphasis supplied). However, *Feres* also bars claims that derive from injuries to service personnel; for example, *Feres* itself and one of its companion cases involved claims by civilian survivors of servicemen who died in military service.

In applying *Feres* to tort claims by family members of military personnel, two lines of cases have emerged. In the first line, courts have interpreted the doctrine to bar the claims of family members which *derive from* the injury to the service member, including, for example, claims for loss of consortium or companionship. *See, e.g., DeFont v. United States*, 453 F.2d 1239 (1st Cir.) (denying spouse's claims for mental anguish and loss of support and companionship), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972); *Van Sickel v. United States*, 285 F.2d 87 (9th Cir.1960) (denying family's claims for wrongful death based on military doctors' negligence); *Harrison v. United States*, 479 F.Supp. 529 (D.Conn.1979) (denying wife's claim for loss of consortium), *aff'd mem.*, 622 F.2d 573 (2d Cir.), *cert. denied*, 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980). *See also Lombard v. United States*, 690 F.2d 215, 225 nn. 17 & 18 (D.C.Cir.1982) (collecting cases), *cert. denied*, —— U.S. ——, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983).

However, in the second line of cases, the *Feres* doctrine has not applied to bar claims where spouses and children of service members have been injured *in their own right* by military personnel. This situation has often arisen where military medical personnel negligently treat a spouse or child. *See, e.g., Portis v. United States*, 483 F.2d 670 (4th Cir.1973) (serviceman's child treated negligently in military hospital); *Williams v. United States*, 435 F.2d 804 (1st Cir.1970) (negligent refusal to admit serviceman's child to military hospital); *Costley v. United States*, 181 F.2d 723 (5th Cir.1950) (negligent treatment of sergeant's wife in delivery of child in military hospital). *See also Johnson v. United States*, 576 F.2d 606 (5th Cir.1978) (serviceman's wife shot by husband negligently released from military hospital).

It is difficult to classify the claim before us as purely *derivative* of Stanley's injuries (since the claim does not arise out of any injury to Stanley). Yet it is not wholly independent of Stanley's service, for we have determined that the blood typing itself was incident to his military service. In

a recent case involving injuries to a soldier and his children, the District of Columbia Circuit has resolved the tension between these two lines of cases by reading narrowly the "independent injury" line and by holding *Feres* to bar claims by family members where "each claim had its 'genesis' in an injury to a serviceman incident to military service." *Lombard v. United States, supra,* 690 F.2d at 226. In *Lombard* the court held that the wife and children of a soldier could not sue for genetic injuries allegedly caused by the soldier's exposure to radiation while working on the "Manhattan Project." That decision is in accord with several other recent decisions involving genetic injuries allegedly caused by a service member's exposure to radiation or chemicals in the course of military service. *See, e.g., Mondelli v. United States,* 711 F.2d 567 (3rd Cir.1983) (radiation), *cert. denied,* —— U.S. ——, 104 S.Ct. 1272, 78 L.Ed.2d —— (1984); *Monaco v. United States,* 661 F.2d 129 (9th Cir.1981) (radiation), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *In re Agent Orange Product Liability Litigation,* 506 F.Supp. 762, 776–81 (E.D.N.Y.1980) (herbicides). In these cases the courts decided that because the children's claims had their "genesis" in their fathers' injuries incident to military service, the *Feres* doctrine applied to bar their claims.

■ But the holdings of *Feres* and subsequent Supreme Court decisions do not apply by some inescapable logic to the present claims by a soldier's daughters. The "derivative injury" and "independent injury" lines of cases do not provide convenient categories easily applicable to this situation where the children's injuries have a causal connection with their father's military service but not with any military injuries he may have suffered. Therefore, in our view, the proper application of *Feres* to the children's claims in this case requires us to consider the matter before us in terms of the policies underlying the *Feres* doctrine. In its decisions interpreting *Feres,* the Supreme Court has consistently considered *Feres* in terms of those policies. *See Stencel Aero Engineering Corp. v.*

*United States,* 431 U.S. 666, 672–74, 97 S.Ct. 2054, 2058–59, 52 L.Ed.2d 665 (1977) (application of *Feres* to third-party claims for indemnification); *United States v. Muniz,* 374 U.S. 150, 159–62, 83 S.Ct. 1850, 1856–57, 10 L.Ed.2d 805 (1963) (tort claims by federal prisoners); *Chappell v. Wallace,* —— U.S. ——, ——, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983) (*Bivens* actions by service members). *See also Citizens National Bank of Waukegan v. United States,* 594 F.2d 1154, 1156–57 (7th Cir. 1979) (examining *Feres* policies applicable to claim based on intentional torts). Similarly, the courts in *Monaco* and *Mondelli* addressed the issues in terms of the policies underlying *Feres.* Our analysis of those policies as they apply to this case persuades us that *Feres* does not bar plaintiffs' claims based on the alleged negligence related to Stanley's pre-induction physical examination.

As the *Feres* doctrine has evolved, three major policy considerations have emerged as the basis of the doctrine. *See Stencel Aero, supra,* 431 U.S. at 672–73, 97 S.Ct. at 2058. First, the relationship between the government and a member of the armed forces is "distinctively federal" in character, *Feres,* 340 U.S. at 143, 71 S.Ct. at 157–58, and the Court has been reluctant to let liability for service-connected injuries hinge on state law under the FTCA. Second, the government provides a no-fault statutory compensation system for military personnel, and in most situations the Court has not permitted service members to recover additional compensation under the FTCA. 340 U.S. at 144–45, 71 S.Ct. at 158–59. It is clear that these first two factors are not present in this suit based on injuries to a service member's children. The children have no "distinctively federal" relationship to the government, nor are they eligible for benefits under the government's alternative compensation system. *See Mondelli v. United States, supra,* 711 F.2d at 569 n. 5. Therefore, if the *Feres* doctrine is to apply at all here, it must be because this action implicates the third

*Feres* factor, the protection of military discipline.

The Court in *Feres* was concerned about the possibility that lawsuits by military personnel would have detrimental effects on military discipline. As the Court said in *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), *Feres* was based upon the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." The Court has consistently emphasized the importance of this concern for military discipline. *See Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977); *United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1857, 10 L.Ed.2d 805 (1963). Just last term, the Court noted that concern for military discipline was the best explanation of the *Feres* doctrine. *Chappell v. Wallace, supra*, — U.S. at ——, 103 S.Ct. at 2365.

This "military discipline" factor is a shorthand means of anticipating the consequences of having civilian courts inquire extensively into military affairs. *Hunt v. United States*, 636 F.2d 580, 599 (D.C.Cir. 1980). The Supreme Court has not wanted civilian courts to "second-guess" military orders or to require members of the armed forces to testify as to one another's decisions and actions. *Stencel Aero, supra*, 431 U.S. at 673, 97 S.Ct. at 2058. Last year the Court held in *Chappell v. Wallace, supra*, that military personnel could not sue their superior officers under the Constitution for alleged racial discrimination because such suits might undermine the "special nature of military life" and "the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel." — U.S. at ——, 103 S.Ct. at 2367.

However, it is important to recognize that the military discipline factor is not an absolute. The civilian courts may inquire into military actions which have injured civilians even if the courts might in some degree have to "second-guess" military decisions or require members of the armed forces to testify about their decisions and actions. *Cf. Stencel Aero, supra*, 431 U.S. at 673, 97 S.Ct. at 2058. If military activity injures civilians as well as military personnel, the civilians may bring a tort claim against the government even though the case requires precisely the same inquiry that suits by military personnel would require. *See Stencel Aero, supra*, 431 U.S. at 676–77, 97 S.Ct. at 2060 (Marshall, J., dissenting); *Hillier v. Southern Towing Co.*, 714 F.2d 714, 723 (7th Cir.1983). *See also Peterson v. United States*, 673 F.2d 237 (8th Cir.1982) (injuries to persons and livestock caused by negligent operation of bomber during training flight); *Allen v. United States*, 527 F.Supp. 476 (D.Utah 1981) (civilians allegedly injured by nuclear weapons tests); *Lakeland R–3 School District v. United States*, 546 F.Supp. 1039 (W.D.Mo.1982) (school damaged by Army demolition exercise).[4] It is, of course, true that if the injured party is a civilian, "military discipline" is not as obviously implicated as when a service member is harmed. In any event, the fact that a lawsuit might involve some inquiry into military activities is not, without more, a reason for barring the plaintiffs' claims. For example, the Third Circuit recently held that a soldier's mother could sue for wrongful death when another soldier killed her son, who was on leave at the time of his death. *Shearer v. United States*, 723 F.2d 1102, 1105–06 (3rd Cir. 1983). The court held that *Feres* did not apply because the victim was on leave and the injury thus was not incident to his military service. It is highly unlikely that

---

**4.** The FTCA does not, however, apply to claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war," 28 U.S.C. § 2680(j), or to claims based upon a "discretionary function or duty" of the government, 28 U.S.C. § 2680(a).

the lawsuit's inquiries into military affairs (such as the Army's allegedly negligent release of the killer from custody) would be affected by whether the victim was on leave, yet the need for inquiry into military affairs was not a sufficient ground for barring the claim under *Feres*.[5] Because the military discipline factor is not therefore an absolute and, in any event, is of somewhat diminished significance when a civilian is harmed, we must therefore consider the extent to which maintenance of the present action, and other similar actions, would threaten military discipline.

We believe that the threat to military discipline in this case is minimal. The plaintiffs are not asking the court to inquire into activities which are distinctively military in nature. They are alleging only that government personnel negligently mistyped Stanley's blood. These allegations in no way implicate distinctively military activity; blood typing presumably occurs generally in hospitals and clinics—wherever transfusions can be given. And it is difficult to imagine how an inquiry into the Army's performance of a simple, straightforward laboratory procedure or perhaps the imprinting of dog tags could threaten the military relationships which are the primary focus of the *Feres* doctrine. Thus any concerns about military discipline are far less substantial in this case than they were in *Mondelli, Lombard, Monaco* and *Agent Orange*. The radiation and Agent Orange cases involved challenges to activity integral and perhaps unique to military duty, training and combat. For example, the soldiers in *Lombard* and *Monaco* had allegedly been exposed to radiation while working on the Army's top secret "Manhattan Project" to develop an atomic bomb

during World War II. According to the complaint in *Mondelli*, the plaintiff's father was ordered to stand near the site of a test nuclear explosion and then to march toward the blast area without protective clothing. The soldiers in *Agent Orange* had been exposed to herbicides in southeast Asia during the Vietnam War or in the course of distributing herbicides for use in southeast Asia. 506 F.Supp. at 776–77. Each of these cases therefore would have involved inquiry into activity integral to the soldiers' military duty and training.

By contrast, this case involves only an inquiry into a routine medical test which happened to be performed by Army medical personnel. The case seems to present no threat at all to military discipline. There is nothing of distinctive military character in a test of blood type or the communication of its results. The court will not have to inquire into the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2445, 37 L.Ed.2d 407 (1973), nor will an inquiry into the blood mistyping undermine the "special nature of military life" or "the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel," *Chappell v. Wallace, supra,* —— U.S. at ——, 103 S.Ct. at 2367. Thus, whatever threat to military discipline might lurk in the children's radiation and Agent Orange cases is not present here. *Cf. Stanley v. United States*, 574 F.Supp. 474, 479–81 (S.D.Fla.1983) (inquiry into plaintiff's voluntary participation in Army's test of LSD did not threaten to compromise military discipline).

---

5. The Fifth Circuit's two opinions in *Johnson v. United States* are also illuminating. There a mentally ill soldier had been negligently released from a military hospital; he shot and wounded his wife and then shot and killed himself. In its first opinion, *Johnson v. United States*, 576 F.2d 606 (5th Cir.1978), the court held that the wife could recover for her own injuries, and the government apparently never even raised a *Feres* defense. In the second opinion, *Johnson v. United States*, 631 F.2d 34 (5th

Cir.1980), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981), the court held that *Feres* barred the wife's claim for her soldier-husband's death. Thus, although the claims for the wife's injuries and for her husband's death required examination of precisely the same military actions leading to her husband's release, *Feres* barred only the claim based on the soldier's death, not the claim for the civilian's own injuries.

The fact that the alleged mistyping occurred in connection with Stanley's pre-induction physical is also relevant to our determination that military discipline is not implicated here. Stanley was a civilian at the time of the examination, and the *Feres* doctrine certainly does not prevent courts from examining military activity which impacts upon civilians immediately as well as injuring them ultimately. Stanley's ties to the military at the time of the examination were minimal. Although we have concluded that the blood test was "incident" to his service for purposes of the Federal Tort Claims Act, the relationship certainly was not a strong one. An inquiry—based upon his daughters' claims—into this peripheral aspect of his service simply does not raise the disturbing prospects which are the foundation of the *Feres* doctrine.

We recognize that courts have been reluctant to decide on a case-by-case basis whether pursuit of a particular claim would threaten military discipline, at least where the claims are for *injuries to service personnel. See, e.g., Hunt v. United States*, 636 F.2d 580, 599 n. 51 (D.C.Cir.1980). For example, under our analysis here, few medical malpractice actions would threaten military discipline, yet the courts have consistently applied the *Feres* doctrine to bar

such claims *by service personnel. See, e.g., Jefferson v. United States*, 340 U.S. 135, 137, 71 S.Ct. 153, 155, 95 L.Ed. 152 (1950) (decided with *Feres*); *Collins v. United States*, 642 F.2d 217 (7th Cir.), *cert. denied*, 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981); *Veillette v. United States*, 615 F.2d 505, 507 (9th Cir.1980); *Vallance v. United States*, 574 F.2d 1282 (5th Cir.), *cert. denied*, 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978). Where a malpractice claim arises from an injury to a member of the armed forces, we do not question the application of *Feres* or the courts' reluctance to weigh in each case the threat to military discipline. In malpractice actions for injuries to service personnel themselves, the other *Feres* factors—the distinctively federal relationship and the alternative compensation scheme—are present and justify application of the doctrine. By contrast, in this case neither of the other *Feres* factors is present, and prior decisions do not appear to control this claim by the soldier's daughters. Therefore, in the absence of these other guides, it is necessary to weigh the importance in this case of the concern for military discipline, for it is the only arguable justification for applying the *Feres* doctrine here.[6]

---

**6.** In a recent case the Fifth Circuit applied the *Feres* doctrine to bar a claim by a child who alleged that he was injured by the negligence of Air Force medical personnel who treated his mother while she was in the Air Force and was pregnant with the child. *Scales v. United States*, 685 F.2d 970, 973–74 (5th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983). The court reasoned that a suit by the mother based on her own treatment would be barred under *Feres*, in part because it might threaten military discipline. Because a suit by the child she had been carrying would have involved an inquiry into the same treatment, the court concluded the child's lawsuit would also threaten military discipline and would also be barred by *Feres*. 685 F.2d at 974. It appears that the mother in *Scales* was herself injured by the negligent treatment. In this case, by contrast, the alleged negligence never injured the father who was in the Army. Only civilians were injured. For the reasons set forth above, we believe that the concern for military discipline is far less substantial when the injured party is a service member's child. The fact that

a lawsuit involves an inquiry into the conduct of persons employed by the armed forces does not bar all claims by all persons. *See Kohn v. United States*, 680 F.2d 922, 925–26 (2d Cir.1982) (*Feres* barred parents' derivative claims based on son's death but did not bar independent claims for Army's actions after son's death); *Johnson v. United States, supra*, 631 F.2d at 36–37 (discussed *supra* at note 5). Civilians injured by military activity can sue under the FTCA. And their right to sue is not affected by the fact that the inquiry is into the conduct of military personnel toward other military personnel. *Shearer v. United States*, 723 F.2d 1102, 1106 (3rd Cir.1983) (negligent release of soldier from military custody); *Underwood v. United States*, 356 F.2d 92 (5th Cir.1966) (negligent release of mentally ill airman from hospital; *Feres* defense not asserted). When military personnel injure civilians, except through combat activities during time of war, the victims may generally pursue a claim regardless of the fact that the lawsuit requires inquiry into military affairs. *See supra* note 4.

Where the threat to military discipline is minimal, and where neither of the other *Feres* policies is implicated in any way, we will not extend *Feres* to these children's claims. The *Feres* doctrine is a judicially-created exception to the applicability of a broad remedial statute. While the doctrine has withstood the test of time, *Feres* and its progeny do not require us to broaden the doctrine beyond the scope of the policies which are its foundation—particularly when we are confronted with purely civilian injuries.

For the foregoing reasons, we reverse the judgment of the district court dismissing the action for lack of subject matter jurisdiction, and we remand the case for further proceedings. Circuit Rule 18 shall not apply on remand.

REVERSED AND REMANDED.