Glenda Jean UTLEY, Kurtis R. Utley, by his next friends Glenda Jean Utley and Paul E. Utley, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. EV 83–124–C.

United States District Court, S.D. Indiana, Evansville Division.

Aug. 9, 1985.

Russell T. Woodson, Evansville, Ind., for plaintiffs.

Carolyn N. Small, U.S. Atty., Indianapolis, Ind., for defendant.

## MEMORANDUM ENTRY

BROOKS, District Judge.

### FACTS

Glenda Jean Utley was in the Air Force when she learned of her pregnancy on November 28, 1978. Her pre-natal care was by Air Force physicians until April 30, 1979, when she was discharged from the military and returned to civilian-dependent status. Kurtis was born on May 7, 1979 at Deaconess Hospital in Evansville, Indiana. The birth was attended by civilian physicians, although routine care was given by government physicians the week between her discharge and delivery.

Kurtis was born with physical disabilities, the potential seriousness of which were noted by the St. Mary's Medical Center Intensive Care Unit in Evansville, Indiana. (Kurtis had been transferred there from Deaconess.) Among the problems noted by the physicians were the following conditions: a premature birth; convulsions secondary to bacterial meningitis; intracranial hemorrhaging; sepsis and hydrocephalus. These and other problems were recorded in the discharge report dated June 18, 1979.

Plaintiffs filed a claim to the Air Force on June 29, 1981 which was denied on March 17, 1983. Plaintiffs then brought this action on May 19, 1983.

Defendant presents this Court with two motions to dismiss. The first motion has its basis on language in 28 U.S.C. § 2401(b) which states:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

It is defendant's contention that plaintiffs' cause "accrued" on June 18, 1979, and that the statute of limitations had run as of June 18, 1981. The plaintiffs' claim to the Air Force made on June 29, 1981 would thus be barred from consideration in this Court due to lack of subject matter jurisdiction.

Defendant also moves for dismissal of this case for lack of subject-matter jurisdiction on the grounds that this case is barred by the *Feres* doctrine which states that "... the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).

For the reasons outlined below, the Court DENIES defendant's first motion to dismiss in its entirety, and GRANTS in part defendant's second motion to dismiss.

### ANALYSIS

■ With regard to defendant's first motion to dismiss based on 28 U.S.C. § 2401(b), the established law is quite clear on the definition of when a cause "accrues." "In medical malpractice cases ... the statute of limitations does not begin to run until after the patient discovers or in the exercise of reasonable diligence should discover his *injury and its cause.*" (Emphasis supplied). *Stoleson v. United States*, 629 F.2d 1265, 1268 (7th Cir.1980).

It is not enough that a plaintiff knows of an injury unless he or she also knows that the treatment received was the probable cause of the injury. The case relied upon by defendant, *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) only confirms this rule.

The issue in *Kubrick* was not whether the statute begins to run upon the discovery of the injury *and* its cause, but whether the statute is tolled until the discovery that the injury may have been *negligently* caused.

That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plain-

tiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff. *United States v. Kubrick*, at 122, 100 S.Ct. at 359.

Thus, the Court in *Stoleson* was correct in its holding that the statute of limitations does not run until discovery of both the injury and its cause. *Stoleson v. United States*, 629 F.2d 1265, 1268–1269 (7th Cir. 1980).

In the case at hand, plaintiffs dispute the date on which they learned of Kurtis's injuries. Whether plaintiffs should have been aware of the seriousness of his injuries in June of 1979 is immaterial, since plaintiffs present an uncontested claim that they had no reason to suspect until August of 1979 that Kurtis's injuries were allegedly caused by treatment received during his mother's pre-natal care. Plaintiffs' claim "accrued" when they learned that the cause of Kurtis's injuries may have been the care Glenda received during her pregnancy while being treated by Air Force physicians. Plaintiffs made this discovery in August, 1979, and thus their complaint to the Air Force was timely filed on June 29, 1981.

Defendant's second motion to dismiss involves a more complex issue. The Federal Tort Claims Act is a piece of legislation that waives the United States Government's immunity from suit to give private individuals the ability to redress injuries suffered at the hands of the government. The *Feres* doctrine is a judicial exception to the Act that bars members of the armed services from suing for injuries caused by the negligence of other members of the

service. The Court held, specifically, that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).

The Supreme Court outlined three major policy reasons for this holding. First, the relationship between the government and members of the armed forces is distinctly federal. Second, the government has a no-fault statutory compensation plan for military personnel. And third, it is necessary to protect military discipline.

Following the decision in *Feres*, the courts have consistently disallowed suits of servicemen injured while in "the course of activity incident to service." This bar has included suits for medical malpractice arising from the treatment of servicemen admitted to military hospitals while off-duty. *Shults v. United States*, 421 F.2d 170 (5th Cir.1969). *See also Henniger v. United States*, 473 F.2d 814 (9th Cir.1973) (medical malpractice during process of discharging plaintiff from service); *Harten v. Coons*, 502 F.2d 1363 (10th Cir.1974) (medical malpractice during elective surgical procedure on servicemen).

In the case at hand, the alleged malpractice occurred while both parents were in the Air Force. Even though their claims have their sole origins in Kurtis's claim, the fact that they were in the service at the time of the alleged malpractice bars them from recovery because of the policy reasons outlined in Feres.[1] The relationship between Glenda and Paul and the United States government was "distinctly federal"; both Glenda and Paul have access to a no-fault compensation scheme in order to redress their injuries; and it would be against public policy to allow a suit where *servicemen* might question decisions made by military officers, thereby threat-

1. The courts have "... held repeatedly since *Feres* that claims based on medical malpractice fall within the bounds of the *Feres* doctrine when the plaintiff was a serviceman on active duty at the time of the alleged malpractice." *Scales v. United States*, 685 F.2d 970, 973 (5th Cir.1982).

ening military discipline. For these reasons, defendant's motion to dismiss is GRANTED with regard to all claims of Glenda and Paul Utley.

Defendant's motion to dismiss is DENIED, however, in the case of all claims of Kurtis Utley by his next friends, Glenda and Paul Utley. The reasoning behind the *Feres* doctrine applies to Kurtis in only the third policy consideration outlined above. Kurtis was never in the military and thus his relationship to the government is as a civilian and not "distinctly federal,[2]" nor does Kurtis have access to the military's no-fault compensation scheme. If Kurtis has, indeed, been injured by the government as alleged, and if the *Feres* doctrine is extended to include him, he will suffer damages for which there is no redress. This is profoundly unjust.

The only policy consideration of *Feres* that is applicable to the case at hand, and must be therefore be weighed carefully, is that of the potential threat to military discipline. In the case of *Scales v. United States*, 685 F.2d 970 (5th Cir.1982) the court extended the holding of *Feres* to bar the suit of an infant injured *in utero* through the negligent treatment of its mother both when she contracted rubella and during later pre-natal care. The court acknowledged that only the concern for military discipline expressed in *Feres* was applicable to the fact situation, and used this as its basis for barring the child's suit. The court concluded that "the need to preserve military discipline, standing alone, can justify dismissal of suits arising out of activities incident to military service even when there was no command relationship between the claimant and the individual tortfeasor." *Ibid* at 973.

In explanation, the court stated that "if the court must second-guess the judgment of military officers in assessing their treatment of a member of the armed services, the claim will be deemed to have a disruptive effect on discipline and will be dismissed." *Ibid.* This view, however, is at odds with the view taken by the Seventh Circuit.

In *West v. United States*, 729 F.2d 1120 (7th Cir.1984) a soldier's children were born with birth defects resulting from the Army's negligent mistyping of their father's blood during a pre-induction physical. This mistyping was ruled an injury incident to service by the court. The court in *West* found that, with regard to the *Feres* doctrine, there were two lines of cases dealing with suits by family members. "In the first line, courts have interpreted the doctrine to bar the claims of family members which *derive from* the injury to the service member ... However, in the second line of cases, the *Feres* doctrine has not applied to bar claims where spouses and children of service members have been injured *in their own right* by military personnel." *Ibid* at 1123.

Because the only injury was that of the child's, the father not being injured by the blood mistyping, the *West* case fell within the latter category. The *West* court distinguished *Scales* by pointing out that the mother in Scales had suffered some injury at the hands of Air Force physicians. *Ibid* at 1127, fn. 6. In the case at hand, we have an identical situation to that of *West* where the only party injured by the alleged malpractice was the infant. Here, the parents' claims derive solely from the child's claims.

2. "The relationship between the Government and a serviceman's dependents is not 'distinctly federal in character' within the meaning of [the *Feres*] decision. That the dependents are the subjects of many rules and regulations promulgated by the Army is not to be denied, nor is the fact that they enjoy privileges by reason of their relation to the serviceman. Their status, with relation to the Government, however, is completely different from his. They are not subject to the orders of superior officers, and, to paraphrase the language of the Supreme Court they are not 'serving the Government' [and] they are not 'on duty' ... It does not follow that, because these dependents enjoy privileges by reason of their relation to the serviceman, their rights to sue are derived from the serviceman's status" *Grigalauskas v. United States*, 103 F.Supp. 543 (D.C.Mass.1951).

Thus, the only bar to the child's suit is the concern for disrupting military discipline raised by *Feres*.

However, it is important to recognize that the military discipline factor is not an absolute. The civilian courts may inquire into military actions which have injured civilians even if the courts might in some degree have to 'second-guess' military decisions or require members of the armed forces to testify about their decisions and actions.... If military activity injures civilians as well as military personnel, the civilians may bring a tort claim against the government even though the case requires precisely the same inquiry that suits by military personnel would require. *West* at 1125. *See also Hillier v. Southern Towing Co.*, 714 F.2d 714, 723 (7th Cir., 1983); *Peterson v. United States*, 673 F.2d 237 (8th Cir.1982); *Allen v. United States*, 527 F.Supp. 476 (D.Utah 1981); *Lakeland R–3 School District v. United States*, 546 F.Supp. 1039 (W.D.Mo.1982). Thus, "the fact that a lawsuit might involve some inquiry into military activities is not, without more, a reason for barring the plaintiffs' claims." *West* at 1125.

The Seventh Circuit concluded that the test in the situation where a civilian dependent is injured is to what degree an action would threaten military discipline. The court pointed out that medical malpractice can occur in either a military or civilian setting and was, therefore, not an activity that was distinctly military in nature. An inquiry into medical malpractice would not involve an inquiry into an "activity integral to the soldiers' military duty and training." *Ibid* at 1126. Therefore, the court concluded that the threat to military discipline was minimal.

■ We have a virtually identical situation in the case at hand. The only party injured by the alleged malpractice is a civilian infant who has no federal relationship with the government and no remedy if his suit is barred. This child has no redress for his injuries through the military's no-fault compensation plan since he is, and always has been, a civilian. Furthermore, the child's suit brings into question only routine pre-natal care, which could be questioned in the civilian sector. The suit does not involve an injury to a service member in the line of duty and thus will not bring into question any matters that are distinctly military as opposed to a situation where the child's injury derived from the parent's injury during military activities or projects. See, *Monaco v. United States*, 661 F.2d 129 (9th Cir.1981).

Where the threat to military discipline is minimal, and where neither of the other *Feres* policies is implicated in any way, we will not extend *Feres* to these children's claims. The *Feres* doctrine is a judicially-created exception to the applicability of a broad remedial statute. While the doctrine has withstood the test of time, *Feres* and its progeny do not require us to broaden the doctrine beyond the scope of the policies which are its foundation—particularly when we are confronted with purely civilian injuries. *West* at 1128.

This Court finds that Kurtis Utley's suit poses little, if any, threat to military discipline for the reasons already discussed, and that *West v. United States* is the controlling case in this circuit.

It is hereby ORDERED, ADJUDGED and DECREED that defendant's Motion to Dismiss is GRANTED with regard to all claims of Glenda Jean Utley and Paul E. Utley and DENIED with regard to all claims of Kurtis R. Utley by his next friends, Glenda Jean Utley and Paul E. Utley.