Alan KAWITT, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 87–1665.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1988.
Decided March 22, 1988.

Alan Kawitt, Chicago, Ill., for plaintiff-appellant.

Elizabeth M. Landes, Asst. U.S. Atty., Anton Valukas, U.S. Atty., U.S. Attorney's Office, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Mr. Kawitt, a lawyer in private practice in Chicago, enlisted in the inactive Naval Reserve in 1984. He hoped to become an officer, and learn and practice military law, but he had to content himself with becoming a petty officer and serving as a law clerk. The maximum age for enlistment in the Naval Reserve is 42, see Naval Military Personnel Manual 1040150, ¶ 3 (1983), but in 1984 Kawitt was 46, having been born on December 19, 1937. On his application he listed his birth date as December 19, 1941, which if true would have made him eligible. Asked at oral argument where he had gotten the date, he stated that he had taken it out of the air. He could have sought a waiver of the maximum-age rule, see *id.* at 3620280, ¶ 3 (1984), but did not.

In the course of processing his application, the Navy requested additional documentation about his age. In response he submitted a birth certificate and driver's license, both of which showed his true date of birth; nevertheless he was accepted. But soon the Navy discovered its error, and on December 28, 1984, after having duly notified Kawitt and received statements and objections from him, it gave him an honorable discharge. This suit for reinstatement and back pay followed. The district court dismissed the suit both for failure to state a claim and for failure to exhaust administrative remedies, and Kawitt appeals.

In defense of the judge's ruling on exhaustion, the government points to 10 U.S.C. § 1552(a) and 32 C.F.R. § 723, which establish the Board for Correction of Naval Records to "correct any military record ... when he [the Secretary of the Navy, acting on the advice of the Board] considers it necessary to correct an error or remove an injustice." Despite the Board's clerical name and the ostensible confinement of its jurisdiction to correcting (rather than perpetuating or forgiving) errors and injustices, the Board apparently has the power to forgive (more precisely to recommend to the Secretary of Navy that he forgive) an erroneous enlistment. See *Champagne v. Schlesinger*, 506 F.2d 979, 982–83 (7th Cir. 1974), and cases cited there. But it is highly unlikely that the Board would exercise that power in Kawitt's favor, and arguably futile, therefore, for him to resort to its processes. Although the Navy was kind enough to give him an honorable discharge, his own admissions show that he enlisted fraudulently; and while there is an old and honorable custom of permitting the young to exaggerate their age in order to be permitted to enlist in the armed forces, we know of no comparable custom of winking at misrepresentations by a middle-aged man who seeks enlistment in the inactive reserve, probably to supplement his civilian income with part-time civilian-type work. Exhibits attached to the record indicate that the Navy is authorized to waive its rules on age and sometimes does so, and

maybe if the Navy needed a law clerk at the Great Lakes Naval Station badly enough it would overlook Kawitt's misrepresentation—but if so it would not have discharged him. He has given no excuse for misrepresenting his age, and we can think of no ground on which the Board for Correction of Naval Records would decide to recommend his reinstatement.

■ Even in the military setting the requirement of exhausting administrative remedies is waived if resort to those remedies would be futile, see *Beller v. Middendorf,* 632 F.2d 788, 801 (9th Cir.1980), but in that setting the exception for futility is interpreted narrowly because of the natural reluctance of civilian courts to intervene in a sphere of activity about which they are more than usually ignorant. See *Von Hoffburg v. Alexander,* 615 F.2d 633, 637–38 (5th Cir.1980); *Hodges v. Callaway,* 499 F.2d 417, 423 (5th Cir.1974); *Muhammad v. Secretary of the Army,* 770 F.2d 1494 (9th Cir.1985); cf. *Woodrick v. Hungerford,* 800 F.2d 1413, 1416–17 (5th Cir.1986). Since the Board for Correction of Naval Records could recommend Kawitt's reinstatement, though it is highly unlikely to do so, the principle of narrow interpretation would point toward dismissal of this suit for failure to exhaust administrative remedies. But since it is also apparent that Kawitt has no substantive basis for this lawsuit, it seems better to terminate the proceeding once and for all, rather than require Kawitt to pester the Board en route to the eventual but certain doom of this lawsuit. We can do this, we think, without getting entangled in the vexed question whether a requirement of exhausting administrative remedies is jurisdictional, a question as yet unsettled in the military setting, see *Montgomery v. Rumsfeld,* 572 F.2d 250 (9th Cir.1978). Since the doctrine of exhaustion in that setting is a judge-made doctrine, the judges can shape it to fit the exigencies of particular cases, and thus recognize an exception for a case such as the present one where the only effect of declining to reach the merits would be to condemn not only the plaintiff but the military service to futile additional proceedings. This conclusion is consistent with the Supreme Court's flexible interpretation of the statutory requirement of exhaustion (codifying the judge-made requirement of exhaustion) in federal habeas corpus cases brought by state prisoners. See *Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

■ Turning, then, to the merits, we find that only two of Kawitt's claims even merit discussion. The first is that in discharging him without a hearing, the Navy deprived him of property without due process of law, in violation of the Fifth Amendment. All other objections to this theory of liability to one side, a job obtained by an admitted and material misrepresentation is not a property right upon which a constitutional suit can be founded.

■ Kawitt also argues that the age–42 cut-off for enlistment in the Naval Reserve violates the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* The Act has since an amendment in 1974 prohibited age discrimination in the "military departments," including the Navy. See 29 U.S.C. § 633a(a); 5 U.S.C. § 102. But we agree with the Ninth Circuit that the amendment was not meant to extend the protections of the statute to the uniformed personnel, whether active or reserve, of the armed forces. See *Helm v. State of California,* 722 F.2d 507, 509 (9th Cir.1983). The court in *Helm* based its conclusion on decisions that hold that Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* which contains the identical "military departments" coverage, see 42 U.S.C. § 2000e–16(a) (added in 1972), is inapplicable to the military's uniformed personnel. See *Gonzalez v. Department of the Army,* 718 F.2d 926 (9th Cir.1983); *Johnson v. Alexander,* 572 F.2d 1219 (8th Cir.1978). Under neither statute is the interpretation that excludes uniformed military personnel inevitable as a matter of semantics, but it makes compellingly good sense, particularly in the case of the age-discrimination law. Military efficiency demands that the services have a free hand in establishing age ceilings designed to ensure that the na-

tion's soldiers, sailors, and airmen are young and fit enough to meet the challenges of military service. Of course in modern war only a small fraction of military personnel serve in combat units, and it is hardly to be supposed that youth and physical fitness are prime credentials for service in the legal departments of the armed forces. But judges should be reluctant to assume the micromanagement of military age-grading policies, and without a clearer directive from Congress we decline to do so. Cf. *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).

Finally, the government asks us to award sanctions against Kawitt under Rule 38 of the Federal Rules of Appellate Procedure for the filing of a frivolous appeal. Though the age-discrimination ground, at least, cannot be deemed frivolous, most of the grounds presented by the appeal are frivolous, including claims under the Sixth Amendment, the privileges and immunities clause of Article IV, § 2, and 42 U.S.C. § 1983 (applicable only to persons acting under *state* law), and a claim of estoppel not presented to the district court. In addition, Kawitt has persisted in this court in citing the panel decision in *West v. United States*, 729 F.2d 1120 (7th Cir.1984), without noting that the decision was vacated when the court granted rehearing en banc, see 744 F.2d 1317 (7th Cir.1984) (en banc) (affirming district court, without opinion, by a tie vote), even though the government had brought this oversight to Kawitt's attention in the district court. Asked at argument in this court about his continuing to cite *West* in a thoroughly misleading and unprofessional fashion (and remember that Kawitt, though he has not been represented in this lawsuit, is a practicing lawyer), Kawitt said he had prepared his appeal brief in a hurry and simply forgot about the subsequent history of *West*. In fact he received an extension of time to file his brief, and a comparison of the brief with his memorandum in opposition to the government's motion to dismiss the action in the district court reveals that most of the brief, including the erroneous citation of *West*, is simply a photocopy of the memorandum.

When an appeal is taken on several grounds, the fact that not all are frivolous will not save the appellant from sanctions for advancing grounds that are. See, e.g., *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1200 (7th Cir.1987); *Granado v. Commissioner*, 792 F.2d 91, 94 (7th Cir. 1986). But when in such cases it is apparent that the costs imposed on the appellee have not been huge, we will not require a meticulous accounting but will simply award a modest round number in sanctions. We direct Mr. Kawitt within 15 days to pay the government $500 for its expenses in defending this appeal.

AFFIRMED WITH SANCTIONS.

CUDAHY, Circuit Judge, dissenting:

Judicial and administrative economy are, of course, desirable goals, but I see no basis for our short-circuiting the administrative process in this case. In fact the government has suggested that something might be gained by recourse to administrative remedies. I share the hunch of the majority that Kawitt will not get his waiver from the Navy. But neither my hunch nor its hunch is a sufficient basis for finding futility as a matter of law.

The records are full of instances of both the under-age and the over-age serving with distinction in the armed forces. The chances of Kawitt's coming under enemy fire do not appear strong, but by subjecting himself to military discipline he could not have been entirely certain where the circumstances of the day might have taken him. My impression is that the services have never taken a stern view of those who joined up either before or after their years allowed.

The courts of appeals have been of one mind in requiring administrative exhaustion in military cases such as this one. See *Muhammad v. Secretary of the Army*, 770 F.2d 1494, 1495 (9th Cir.1985) (citation omitted) ("Strict application of the exhaustion requirement in military discharge

cases maintains the balance between military authority and the federal courts."); *Von Hoffburg v. Alexander,* 615 F.2d 633, 637–38 (5th Cir.1980) (citation omitted) ("In the military context, the exhaustion requirement promotes the efficient operation of the military's judicial and administrative systems, allowing the military an opportunity to fully exercise its own expertise and discretion prior to any civilian court review."); *Champagne v. Schlesinger,* 506 F.2d 979, 983 (7th Cir.1974) (citation omitted) (" '[A] plaintiff challenging an administrative military discharge will find the doors of the federal courthouse closed pending exhaustion of available administrative remedies.' "). These cases and other decisions do, of course, recognize a futility exception to the exhaustion requirement. The cases hold, however, that the futility exception is extremely narrow where the issue is recourse to military administrative remedies. The military must have the initial opportunity to apply its own regulations. In Kawitt's case the Navy has indicated that a waiver of the maximum age rule was available, that Kawitt had not requested such a waiver and that the Navy has granted age waivers in many other instances. The Board of Correction of Naval Records must be given an opportunity to interpret and apply its regulations to Kawitt's case.

It is not necessary for us now to determine whether or not Kawitt had a property right in his military employment. The majority says he had not since he lied about his age in order to enlist. I am not at all sure about such a "false pretenses" theory. It may seem not inequitable in Kawitt's case since he was a land-locked sailor. If instead he had gone down with his ship at sea, I doubt that many legal conclusions would have been drawn from the state of his enlistment papers. Again I think it very sound policy to leave these matters in the first instance to the proper military authorities. *See Muhammad,* 770 F.2d at 1496 (claimed constitutional violation could be corrected through administrative appeal).

I concur in the $500 sanction because of Kawitt's obdurate insistence on citing the

vacated opinion in *West* (an opinion which I authored, by the way).

I therefore respectfully dissent to the extent indicated.